STATE of Minnesota, Respondent,

v.

Otis MANNING, Appellant.

No. C7–94–2242.

Court of Appeals of Minnesota.

May 30, 1995.

Review Denied July 20, 1995.

Hubert H. Humphrey III, Atty. Gen., St. Paul, Surell Brady, Minneapolis City Atty., Allison Krehbiel–Baskfield, Asst. City Atty., Minneapolis, for respondent.

William R. Kennedy, Hennepin County Public Defender, Warren R. Sagstuen, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey III, Atty. Gen., Katherine M. Brennan, Thomas Erik Bailey, Asst. Attys. Gen., St. Paul, for amicus Atty. Gen.

Considered and decided by SCHUMACHER, P.J., and PARKER and FOLEY,* JJ.

## OPINION

SCHUMACHER, Judge.

Appellant Otis Manning challenges his conviction for violating the sex offender registration law, Minn.Stat. § 243.166 (Supp.1993). He contends that applying the statute to a felon who was convicted before it took effect violates the ex post facto prohibitions of the United States and Minnesota Constitutions. We affirm.

## FACTS

In 1988, Manning was convicted of fourth degree criminal sexual conduct and sentenced to 15 months in prison. Execution of the sentence was stayed, and he was placed on probation for five years. In January 1991, Manning violated the terms of his probation and was ordered to serve the 15-month sentence. Minn.Stat. § 243.166 (Supp.1991) took effect on August 1, 1991 while Manning was in prison. 1991 Minn. Laws ch. 285, §§ 3, 13(a). The statute requires convicted sex offenders and other felons to register with a corrections agent and

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

notify the agent of any change of address for 10 years following assignment to an agent or until probation expires, whichever occurs later. Minn.Stat. § 243.166 (1992 & Supp. 1993).[1] Failure to register is a misdemeanor. *Id.*, subd. 5 (1992). The registration form that Manning completed included his physical description, address, and information about his conviction.

1. Minn.Stat. § 243.166 (1992 & Supp.1993) provides as follows:

> Subdivision 1. **Registration required.** A *person shall register under this section* if:
> (1) the person was charged with a felony violation of or attempt to violate any of the following, and convicted of that offense or of another offense arising out of the same set of circumstances:
> (i) murder under section 609.185, clause (2);
> (ii) kidnapping under section 609.25, involving a minor victim; or
> (iii) criminal sexual conduct under section 609.342, subdivision 1, paragraph (a), (b), (c), (d), (e), or (f); 609.343, subdivision 1, paragraph (a), (b), (c), (d), (e), or (f); 609.344, subdivision 1, paragraph (c), or (d); or 609.345, subdivision 1, paragraph (c), or (d); or
> (2) the person was convicted of a predatory crime as defined in section 609.1352, and the offender was sentenced as a patterned sex offender or the court found on its own motion or that of the prosecutor that the crime was part of a predatory pattern of behavior that had criminal sexual conduct as its goal.
> Subd. 2. **Notice.** When a person who is required to register under this section is sentenced, the court shall tell the person of the duty to register under this section. The court shall require the person to read and sign a form stating that the duty of the person to register under this section has been explained.
> Subd. 3. **Registration procedure.** (a) The person shall register with the corrections agent as soon as the agent is assigned to the person.
> (b) If the person changes residence address, the person shall give the new address to the current or last assigned corrections agent in writing within ten days. An offender is deemed to change addresses when the offender remains at a new address for longer than two weeks and evinces an intent to take up residence there. The agent shall, within three business days after receipt of this information, forward it to the bureau of criminal apprehension.
> Subd. 4. **Contents of registration.** The registration provided to the corrections agent must consist of a statement in writing signed by the person, giving information required by the bureau of criminal apprehension, and a fingerprint card and photograph of the person if these have not already been obtained in connection with the offense that triggers regis-

> tration. Within three days, the corrections agent shall forward the statement, fingerprint card, and photograph to the bureau of criminal apprehension. The bureau shall send one copy to the appropriate law enforcement authority that will have jurisdiction where the person will reside on release or discharge.
> Subd. 5. **Criminal penalty.** A person required to register under this section who violates any of its provisions is guilty of a misdemeanor.
> Subd. 6. **Registration period.** (a) Notwithstanding the provisions of section 609.165, subdivision 1, a person required to register under this section shall continue to comply with this section until ten years have elapsed since the person was initially assigned to a corrections agent in connection with the offense, or until the probation, supervised release, or conditional release period expires, whichever occurs later.
> (b) If a person required to register under this section fails to register following a change in address, the commissioner of public safety may require the person to continue to register for an additional period of five years.
> Subd. 7. **Use of information.** The information provided under this section is private data on individuals under section 13.01, subdivision 12. The information may be used only for law enforcement purposes.
> Subd. 8. **Law enforcement authority.** For purposes of this section, a law enforcement authority means, with respect to a home rule charter or statutory city, the chief of police, and with respect to an unincorporated area, the sheriff of the county.
> Subd. 9. **Prisoners from other states.** When the state accepts a prisoner from another state under a reciprocal agreement under the interstate compact authorized by section 243.16, the acceptance is conditional on the offender agreeing to register under this section when the offender is living in Minnesota following a term of imprisonment if any part of that term was served in this state.

Minn.Stat. § 243.166 (1992 & Supp.1993).

2. In July 1992, the statute required offenders to register upon their release from prison. *See* Minn.Stat. § 243.166, subds. 1, 2 (Supp.1991). Under a 1993 amendment to the statute, offenders now register at the time of sentencing. 1993 Minn.Laws ch. 326, art. 10, § 2.

---

Pursuant to the statute, Manning signed a form entitled "Sex Offender/Kidnapper Registration," which in effect acknowledged his notification of the registration requirements. He signed the form in July 1992 shortly after his release from prison.[2] On January 20, 1994, Manning was charged with violating the registration statute because he moved without notifying his corrections agent.

Manning moved for dismissal, arguing the statute was an ex post facto law. The trial court denied the motion to dismiss. Following a trial on stipulated facts, Manning was found guilty.

## ISSUE

Does Minn.Stat. § 243.166, requiring the registration of convicted sex offenders, violate the federal and state constitutional prohibitions against ex post facto laws?

## ANALYSIS

■ In evaluating constitutional challenges, the interpretation of statutes is a question of law. *In re Blilie*, 494 N.W.2d 877, 881 (Minn.1993). Minnesota statutes are presumed constitutional and will be declared unconstitutional "only when absolutely necessary." *In re Haggerty*, 448 N.W.2d 363, 364 (Minn.1989) (citing *City of Richfield v. Local No. 1215*, 276 N.W.2d 42, 45 (Minn. 1979)).

■ Both the United States and Minnesota Constitutions prohibit the enactment of ex post facto laws. U.S. Const. art I, § 10; Minn. Const. art. I, § 11. When examining a state constitutional provision, a decision of the United States Supreme Court interpreting a parallel provision of the federal constitution is of persuasive, although not controlling, force. *State v. Fuller*, 374 N.W.2d 722, 727 (Minn.1985).

■ An ex post facto law "renders an act punishable in a manner in which it was not punishable when it was committed." *Starkweather v. Blair*, 245 Minn. 371, 386, 71 N.W.2d 869, 879 (1955) (footnote omitted). More specifically, to constitute an ex post facto law, a statute must: (1) punish as a crime an act which was innocent when committed; (2) increase the burden of punishment for a crime after its commission; or (3) deprive one charged with a crime of a defense that was available when it was committed. *Collins v. Youngblood*, 497 U.S. 37, 52, 110 S.Ct. 2715, 2724, 111 L.Ed.2d 30 (1990). Manning argues that the registration requirement makes his punishment more burdensome. We disagree.

As a threshold matter, we note that the statute is applied to Manning retroactively. The legislature provided that the statute applies to offenders released from prison after August 1, 1991, regardless of the date of the offense. 1991 Minn.Laws ch. 285, § 13(a). Additionally, the state concedes that the statute is applied retroactively in this case.

■ In determining whether the registration statute increases the burden of Manning's punishment, we must determine if Minn.Stat. § 243.166 (Supp.1993) is punitive or regulatory. We first ask whether the legislature intended to punish an offender for a past act, "or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation." *De Veau v. Braisted*, 363 U.S. 144, 160, 80 S.Ct. 1146, 1155, 4 L.Ed.2d 1109 (1960). Here, the legislature did not indicate whether the statute was intended to be punitive or regulatory. Consequently, to determine whether the statute's effect is punitive, we look to factors enumerated in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 169, 83 S.Ct. 554, 568, 9 L.Ed.2d 644 (1963). The factors are:

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.

*Id.* at 168–69, 83 S.Ct. at 567–68 (footnotes omitted) (emphasis in original). As the Arizona Supreme Court noted when it addressed this same issue, the *Mendoza–Martinez* test

> focus[es] appropriate attention on the effects of the registration requirement on convicted sex offenders and on the rationality between the requirement and its purported non-punitive function.

*State v. Noble*, 171 Ariz. 171, 829 P.2d 1217, 1221 (1992). Because the registration requirement is dependent upon the conviction

of an underlying crime, there will necessarily be a finding of scienter, and the underlying behavior is, of course, criminal. The remaining factors are helpful in our analysis.

**1. Registration as an Affirmative Disability or Restraint.** Manning contends that the registration requirement disables him by restricting freedom of movement, increasing police scrutiny, and subjecting him to live within the shadow of his crime. We disagree. Although offenders must give notice if they relocate, this requirement alone does not restrain their movement. An offender's conviction is a matter of public record regardless of the registration. Furthermore, the registration information is "private data" and "may be used only for law enforcement purposes." Minn.Stat. § 243.166, subd. 7. Similar sex offender registration statutes have been upheld in states where access to registration information is less restrictive than in Minnesota. *See, e.g.,* Ariz.Rev.Stat. Ann. §§ 13–3823 (1989), 41–1750(G)(2) (Supp. 1994) (registration documents available to noncriminal justice agency, in part, for purpose of evaluating employees and contract employees); *Noble,* 829 P.2d at 1222; *see also* Wash.Rev.Code Ann. § 4.24.550(1) (West Supp.1995) (sex offender information may be divulged to public when "necessary for public protection"); *State v. Ward,* 123 Wash.2d 488, 869 P.2d 1062, 1069–70 (1994).

**2. Registration Historically Regarded as Punishment.** Registration has not traditionally been viewed as punishment. *See generally Lambert v. California,* 355 U.S. 225, 229, 78 S.Ct. 240, 243, 2 L.Ed.2d 228 (1957) (felony registration ordinance is, at most, law enforcement technique). Governments often use varying methods of registration as a way for law enforcement agencies to have easy access to necessary information. Additionally, the fact that the registration information is confidential lessens the similarity between this statute and traditions in which "registration" amounted to public scorn. *See, e.g.,* Nathaniel Hawthorne, *The Scarlet Letter* (New American Library 1980) (1850).

**3. Traditional Aims of Punishment.** The next relevant *Mendoza–Martinez* factor examines whether the law promotes the tra-

ditional deterrent function of punishment. The notion here is that a registered sex offender is less likely to commit a crime if police can easily ascertain his whereabouts. We acknowledge that the registration may have a minimal deterrent effect, but we agree with the Washington Supreme Court that an offender "may be deterred from the fact of conviction and punishment *served,* whether he is required to register or not." *Ward,* 869 P.2d at 1073 (emphasis in original).

**4. Relationship to Nonpunitive Purpose.** Under the last two factors, the statute must not be excessive in relation to its nonpunitive purpose. The registration law clearly has a nonpunitive purpose: to help police investigations. *See People v. Adams,* 144 Ill.2d 381, 163 Ill.Dec. 483, 486, 581 N.E.2d 637, 640 (1991) (sex offender registration act assists officers in locating past offenders when appropriate).

Manning contends that the statute burdens former offenders by defining them as members "of a small and more notorious group more likely to be questioned and investigated when local sex crimes occur." *State v. Noble,* 167 Ariz. 440, 808 P.2d 325, 328 (App.1990), *vacated,* 171 Ariz. 171, 829 P.2d 1217 (1992). The mere fact that offenders are registered, however, does not reduce their constitutional rights. Registrants are entitled to the same due process protections as they would be absent the registration. *See Noble,* 829 P.2d at 1223 (registration does not diminish general right to be free from unconstitutional police practices); *Adams,* 581 N.E.2d at 641 (registrants continue to enjoy constitutional safeguards). It is important to note that only convicted felons are required to register. *Cf. In re Reed,* 33 Cal.3d 914, 191 Cal.Rptr. 658, 664–65, 663 P.2d 216, 222 (1983) (statute requiring misdemeanants to register constitutes cruel and unusual punishment).

Consideration of the *Mendoza–Martinez* factors leads us to conclude that the registration statute does not impose an affirmative disability, has not historically been viewed as punishment, and does not advance the traditional aims of punishment. Al-

though former offenders may be slightly burdened by the fact that they could be scrutinized when local sex crimes occur, we find that this additional burden is not excessive in relation to the important regulatory purpose served.

## DECISION

Minnesota's sex offender registration statute is not punitive and therefore does not violate federal and state constitutional prohibitions against ex post facto laws.

**Affirmed.**