**In the Matter of Vanessa Yoland REW, and o/b/o T.C.B. and D.S.B., petitioner, Respondent,**

v.

**James Allen BERGSTROM, Appellant.**

No. A10–2145.

Court of Appeals of Minnesota.

Dec. 27, 2011.

Thomas A. Gilligan, Murnane Brandt, St. Paul, MN, for respondent.

Jill Clark, Golden Valley, MN, for appellant.

Elizabeth J. Richards, Minnesota Coalition for Battered Women, St. Paul, MN; Rana Fuller, Battered Women's Legal Advocacy Project, Minneapolis, MN; and

Kristine Lizdas, Battered Women's Justice Project, Minneapolis, MN, for amici curiae.

Considered and decided by KALITOWSKI, Presiding Judge; MINGE, Judge; and ROSS, Judge.

## OPINION

KALITOWSKI, Judge.

Appellant James Bergstrom challenges the district court's denial of his motion to vacate the 50–year extension of an order for protection (OFP) precluding him from contacting respondent Vanessa Rew or the two minor children of their marriage, arguing that (1) the OFP statute violates the First Amendment because it is a prior restraint on speech; (2) the OFP extension violates appellant's due process rights; (3) basing the extension of the OFP on appellant's prior criminal convictions violates the prohibition on double jeopardy; (4) applying the 50–year extension to appellant based on convictions that occurred before the 50–year extension provision became effective violates the prohibition on ex post facto laws; and (5) the district court erred by interpreting the OFP statute to allow the OFP to be extended without a showing of abuse.

## FACTS

Appellant and respondent were married on June 18, 1994, and there are two minor children of their marriage. According to respondent, appellant began physically abusing her three years into the marriage while she was pregnant with the couple's first child. In 2002, respondent alleged that appellant severely beat her, dragged her down stairs, choked and punched her, and hit her head on a faucet, causing her to black out. Appellant pleaded guilty to fifth-degree assault in connection with this incident. On August 22, 2002, respondent obtained an OFP against appellant on behalf of herself and the children. Appellant agreed to the OFP, and no findings of abuse were made. Four months later, respondent was convicted of a misdemeanor violation of the OFP.

Following appellant's convictions, the parties reconciled and remained together until 2007. Respondent later alleged that throughout this period, appellant beat and threatened her. Respondent obtained a one-year OFP on June 5, 2007, again with appellant's agreement, and no findings of abuse. Appellant was subsequently arrested for stalking respondent in a rental car with a camera and binoculars, and on December 17, 2007, he pleaded guilty to violating the OFP. Several months later, respondent reported to police that appellant accessed her e-mail accounts, and on July 3, 2008, appellant again pleaded guilty to violating the OFP.

Before the 2007 OFP was set to terminate in 2008, respondent, with appellant's agreement, obtained a new one-year OFP that included the children. The 2008 OFP temporarily suspended appellant's parenting time until appellant participated in six months of individual therapy or until the district court otherwise modified appellant's parenting time. On January 9, 2009, the OFP was extended from one year to two years, but the parenting-time condition was amended to require that appellant attend only three months of individual therapy.

Throughout most of 2009, appellant was incarcerated for violating the terms of his probation by stalking and harassing another woman and tampering with his electronic monitoring system. He was released from Minnesota Correctional Facility–Stillwater on October 19, 2009. Several months later, on April 22, 2010, appellant was arrested and charged with violating the 2008 OFP after he showed up at respondent's church retreat and refused to

leave. Appellant was incarcerated in the Washington County jail until June 16, 2010, when this charge was dropped.

On July 30, 2010, respondent filed a petition to extend the 2008 OFP for 50 years based on appellant's prior OFP violations, respondent's fear of physical harm, appellant's acts of stalking, and appellant's recent release from incarceration. In her petition, respondent alleged incidents of abuse beginning in 1997 and continuing to the present. Included were several incidents of what respondent perceived to be stalking that had taken place after appellant was released from the Washington County jail in June 2010.

At the contested hearing, respondent chose to limit her evidence to appellant's past OFP violations and his recent release from prison in 2009. Appellant proffered his own testimony and that of two other witnesses to contradict some of the factual allegations in respondent's petition. But the district court excluded the proffered testimony as irrelevant because it did not address appellant's previous OFP violations or his recent release from prison.

After considering the evidence, the district court concluded that the statutory criteria for extending the order were satisfied under Minn.Stat. § 518B.01, subd. 6a(a). The district court also extended the duration for 50 years after making the required findings under Minn.Stat. § 518B.01, subd. 6a(b). Under the terms of the extended OFP, appellant is prohibited from (1) committing acts of domestic abuse against respondent or the children; (2) having contact, either direct or indirect, with respondent or the children, "whether in person, with or through other persons, by telephone, letter, electronic means, or in any other way," except according to the conditions for establishing parenting time; (3) coming within 120 yards of respondent's residence, place of work, or church;

(4) coming within 120 yards of the children's school or childcare location; (5) coming within 50 yards of respondent or the children in public places; or (6) possessing, shipping, or transporting any firearm.

Appellant subsequently moved to vacate the order under Minn. R. Civ. P. 60.02, asserting various constitutional and statutory challenges. The district court denied the motion.

## ISSUES

1. Was the issuance of a 50–year OFP extension a violation of appellant's First Amendment right to free speech?

2. Was the issuance of a 50–year OFP extension a violation of appellant's due process rights?

3. Does the issuance of a 50–year OFP extension based on appellant's prior OFP violations constitute double jeopardy?

4. Is Minn.Stat. § 518B.01, subd. 6a(b), an unconstitutional ex post facto law when the extension is based on OFP violations that predated enactment of the 50–year extension provision?

5. Did the district court err in ruling that Minn.Stat. § 518B.01, subd. 6a(b), does not require a showing of abuse?

## ANALYSIS

The constitutionality of a statute presents a question of law, which is reviewed de novo. *State v. Melde,* 725 N.W.2d 99, 102 (Minn.2006). We exercise the power to declare a statute unconstitutional "with extreme caution and only when absolutely necessary." *In re Haggerty,* 448 N.W.2d 363, 364 (Minn.1989). One who challenges the constitutionality of a statute must overcome every presumption in favor of its constitutionality. *Mil-*

*ler Brewing Co. v. State,* 284 N.W.2d 353, 356 (Minn.1979).

Under the Minnesota Domestic Abuse Act, any person who has been the victim of "domestic abuse" by a "family or household member" may petition the district court for an OFP. Minn.Stat. § 518B.01 (2010). An OFP may grant the petitioning party a variety of relief, including restraining the abusing party from committing acts of domestic abuse, excluding the abusing party from a shared dwelling, or the petitioner's dwelling, awarding temporary custody and parenting time, and prohibiting the abusing party from contacting the petitioner. *Id.*, subd. 6(a). Violating the terms of an OFP is a criminal offense. *Id.*, subd. 14(a)-(d).

Although an OFP typically may not exceed a period of two years, *id.*, subd. 6(b), at a petitioner's request, the district court may extend the relief in an existing OFP or issue a new order. *Id.*, subd. 6a(a). To do so, a petitioner must show that

(1) the respondent has violated a prior or existing order for protection;

(2) the petitioner is reasonably in fear of physical harm from respondent;

(3) the respondent has engaged in the act of stalking within the meaning of section 609.749, subdivision 2; or

(4) the respondent is incarcerated and about to be released, or has recently been released from incarceration.

*Id.* The extension provision states that "[a] petitioner does not need to show that physical harm is imminent to obtain an extension or a subsequent order under this subdivision." *Id.*

In 2008, the legislature amended the act to permit such an extension for up to 50 years, if the court finds that the abusing party "has violated a prior or existing order for protection on two or more occasions" or that the petitioner has been is-

sued two or more prior OFPs against the same party. 2008 Minn. Laws ch. 316, §·2, at 1216–17; *see* Minn.Stat. § 518B.01, subd. 6a(b). The relief that may be granted under this new provision is limited to restraining the abusing party from committing acts of domestic abuse or prohibiting the abusing party from having any contact with ·the petitioner. Minn.Stat. § 518B.01, subd. 6a(b).·

## I.

█ Appellant challenges the constitutionality of Minn.Stat. § 518B.01, subd. 6a(b), as a prior restraint on speech in violation of the First Amendment.

█ The United States and Minnesota Constitutions guarantee the right to free speech. U.S. Const. amend. I; Minn. Const. art. I, § 3. But this right is not unlimited. "[T]he government may regulate certain categories of expression consistent with the Constitution." *Virginia v. Black,* 538 U.S. 343, 358, 123 S.Ct. 1536, 1547, 155 L.Ed.2d 535 (2003). "[O]ur society, like other free but civilized societies, has permitted restrictions upon the content of speech in a few limited areas, which are 'of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.'" *Dunham v. Roer,* 708 N.W.2d 552, 562 (Minn.App.2006) (quoting *R.A.V. v. City of St. Paul,* 505 U.S. 377, 382–83, 112 S.Ct. 2538, 2542–43, 120 L.Ed.2d 305 (1992)) (other quotation omitted), *review denied* (Minn. Mar. 28, 2006). An order issued in the area of First Amendment rights must be precise and narrowly tailored to achieve the "pin-pointed objective" of the "exact needs of the case." *Carroll v. President Comm'rs of Princess Anne,* 393 U.S. 175, 183–84, 89 S.Ct. 347, 353, 21 L.Ed.2d 325 (1968). ·

An OFP extension issued under subdivision 6a(b) "may restrain the abusing party from committing acts of domestic abuse; or prohibit the abusing party from having any contact with the petitioner, whether in person, by telephone, mail or electronic mail or messaging, through electronic devices, through a third party, or by any other . means." Minn.Stat. § 518B.01, subd. 6a(b). Appellant argues that subdivision 6a(b) constitutes a prior restraint on speech because "[t]his statute limits *all speech*." We disagree.

Contrary to appellant's assertion, an injunction that restricts speech in a content-neutral manner is not a prior restraint and is therefore held to a less-exacting standard of review. *Schenck v. Pro–Choice Network of W. N.Y.*, 519 U.S. 357, 372, 117 S.Ct. 855, 864, 137 L.Ed.2d 1 (1997) (citing *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 762–64, 114 S.Ct. 2516, 2523–24, 129 L.Ed.2d 593 (1994)). *Schenck* and *Madsen* both addressed the constitutionality of injunctions establishing protest-free buffer zones around abortion clinics. *Schenck*, 519 U.S. at 362–71, 117 S.Ct. at 859–64; *Madsen*, 512 U.S. at 757–76, 114 S.Ct. at 2521–30. In *Madsen*, the court acknowledged that "[p]rior restraints do often take the form of injunctions," but clarified that "[n]ot all injunctions that may incidentally affect expression" are prior restraints for purposes of First Amendment analysis. 512 U.S. at 763 n. 2, 114 S.Ct. at 2524 n. 2. The court declined to apply prior-restraint analysis because buffer zones do not prevent protesters from expressing their message through other means and the basis for issuing the injunction was the protesters' "prior unlawful conduct," not "the content of [their] expression." *Id.*

Like a protest buffer zone, an OFP extension issued under subdivision 6a(b) that includes a no-contact order is content-neu-

tral because it restricts contact with the abuse victim initiated by the abusing party without regard for the message the abusing party intends to express. Moreover, a district court may only issue such extension when there is a sufficient showing as to the abuser's prior unlawful or abusive conduct. Minn.Stat. § 518B.01, subd. 6a(b). Therefore, we decline to apply the heightened prior-restraint standard, and instead apply the test articulated in *Madsen.*

The *Madsen* test requires us to examine whether "the challenged provisions of the injunction burden no more speech than necessary to serve a significant government interest." 512 U.S. at 765, 114 S.Ct. at 2525. And "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678–79, 20 L.Ed.2d 672 (1968).

**Governmental Interest**

The Minnesota Supreme Court has declared that the state has a "strong interest in preventing violence in a domestic setting." *Baker v. Baker*, 494 N.W.2d 282, 288 (Minn.1992). And that interest is particularly strong where a victim of abuse has come forward to seek the protection of the state. *See id.* at 286 n. 4 (citing extensive research demonstrating that "the risk of danger increases once the victim makes the choice or attempts to leave the abusive relationship"). Other states that have reviewed First Amendment challenges to the constitutionality of domestic orders for protection have concluded that the state's interest in this realm is either significant or compelling. *See State v. Doyle*, 18 Neb. App. 495, 787 N.W.2d 254, 259 (2010) ("The [s]tate has a compelling interest in protect-

ing victims of domestic violence from continuing harassment and abuse."); *State v. Hauge,* 547 N.W.2d 173, 176 (S.D.1996) ("Without a doubt, domestic abuse protection orders preserve compelling governmental interests."); *State v. Hardy,* 54 P.3d 645, 649 (Utah Ct.App.2002) ("The state has an inarguably significant interest in protecting the health and well-being of its citizens. In furtherance of this goal, the state has created a mechanism whereby the victims of domestic violence may obtain civil orders of protection against their abusers.").

We conclude that the state has a significant interest in protecting the victims of domestic violence. And those victims who may seek extended relief under subdivision 6a(b) fall within the category of abuse victims the state has a significant interest in protecting.

**No More Speech than Necessary**

Appellant argues that subdivision 6a(b) regulates more speech than necessary because it permits a court to prohibit *all* communication with a victim initiated by an abuser for up to 50 years. He urges us to apply the caselaw construing Minnesota's harassment laws to subdivision 6a(b). He cites *Dunham,* 708 N.W.2d at 552, to support his argument that harassment restraining orders may only limit unprotected speech, such as "fighting words" or "true threats." And he argues that we should follow *State v. Machholz* where the Minnesota Supreme Court concluded that the criminal harassment statute then in effect was unconstitutionally overbroad because the category of speech it proscribed could not be confined to "fighting words." 574 N.W.2d 415, 420–21 (Minn.1998).

Appellant misreads *Dunham,* and his reliance on *Dunham* and *Machholz* is misplaced. In *Dunham,* we recognized that "conduct that is invasive of the privacy of another" is constitutionally unprotected and we upheld the harassment statute because it "*only* regulates speech or conduct that constitutes 'fighting words,' 'true threats,' or substantial invasions of one's privacy." 708 N.W.2d at 565–66 (emphasis added). Unlike the harassment statutes at issue in *Dunham* and *Machholz,* the no-contact provision in subdivision 6a(b) is a content-neutral restriction that regulates both speech and nonspeech elements. *See Madsen,* 512 U.S. at 765, 114 S.Ct. at 2525; *see also O'Brien,* 391 U.S. at 376, 88 S.Ct. at 1678–79. Therefore, we apply the no-more-speech-than-necessary standard. *Madsen,* 512 U.S. at 765, 114 S.Ct. at 2525.

Although subdivision 6a(b) allows a court to prohibit all contact between two people initiated by an abusing party for up to 50 years, the statute is narrowly crafted. A district court may only issue an OFP extension under subdivision 6a(b) when the petitioning party has first obtained an initial OFP by demonstrating the existence of "domestic abuse" according to the statutory definition. *See* Minn.Stat. § 518B.01, subd. 2(a) (2010) (defining "domestic abuse" as "physical harm, bodily injury, or assault"; "the infliction of fear of imminent physical harm, bodily injury, or assault"; or "terroristic threats, within the meaning of section 609.713, subdivision 1; criminal sexual conduct, within the meaning of section 609.342, 609.343, 609.344, 609.345, or 609.3451; or interference with an emergency call within the meaning of section 609.78, subdivision 2"). "Domestic abuse" only includes these certain acts that are "committed against a family or household member by a family or household member." *Id.* And the definition of "family or household members" is limited to:

(1) spouses and former spouses;

(2) parents and children;

(3) persons related by blood;

(4) persons who are presently residing together or who have resided together in the past;

(5) persons who have a child in common regardless of whether they have been married or have lived together at any time;

(6) a man and woman if the woman is pregnant and the man is alleged to be the father, regardless of whether they have been married or have lived together at any time; and

(7) persons involved in a significant romantic or sexual relationship.

Minn.Stat. § 518B.01, subd. 2(b) (2010).

The grounds for extending an OFP for up to 50 years are even more narrowly drawn. Subdivision 6a(b) applies only to the most persistent abusers. A district court may only order such relief when "(1) the respondent has violated a prior or existing order for protection on two or more occasions; or (2) the petitioner has had two or more orders for protection in effect against the same respondent." Minn.Stat. § 518B.01, subd. 6a(b). An abusing party who meets these criteria has demonstrated a pattern of harmful and invasive conduct that invites the lawful regulation of the state. *See Dunham,* 708 N.W.2d at 565 ("The state may also regulate conduct that is invasive of the privacy of another."). Moreover, contact between a persistent abuser and the abuser's victim, whether its content is innocent or threatening, does not implicate matters of public concern. *Cf. Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 758–59, 105 S.Ct. 2939, 2944–45, 86 L.Ed.2d 593 (1985) (recognizing that "not all speech is of equal First Amendment importance," and emphasizing that speech on "matters of public concern" is "at the heart of the First Amendment's protection" (quotations omitted)).

In addition, a 50–year OFP extension is not absolute. The restrained party may seek to modify, or even vacate, an OFP after five years if the order has not been violated and the restrained party can show that the order is no longer necessary. Minn.Stat. § 518B.01, subd. 11(b) (2010).

We conclude that subdivision 6a(b) "burden[s] no more speech than necessary to serve a significant government interest." *Madsen,* 512 U.S. at 765, 114 S.Ct. at 2525.

## II.

 Appellant argues that the OFP extension violates his right to due process. The state may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. XIV; *Bendorf v. Comm'r of Pub. Safety,* 727 N.W.2d 410, 413 n. 4 (Minn.2007). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time in a meaningful manner." *Brooks v. Comm'r of Pub. Safety,* 584 N.W.2d 15, 19 (Minn. App.1998) (quotation omitted), *review denied* (Minn. Nov. 24, 1998).

**Strict Liability Offense**

Appellant contends that the 50–year OFP extension is a quasi-criminal or criminal offense because it authorizes a 50–year "restriction on liberty." And because appellant's past convictions served as the basis for the extension, he argues that the extension is a strict liability offense. As such, he claims that the OFP extension violates due process because he was not provided notice of the collateral consequences of pleading guilty to his prior OFP violations. We disagree.

 Due process does not require that a criminal defendant be given notice of the collateral consequences of a guilty plea. *See State v. Byron,* 683 N.W.2d 317, 322 (Minn.App.2004) (stating due process requires a defendant be informed only of

direct, not collateral consequences of a plea), *review denied* (Minn. Sept. 29, 2004). The extension of respondent's OFP against appellant is not a criminal sanction; it is a remedial civil order issued at the discretion of the district court, intended to protect respondent and the children from future abuse. As such, it is not a direct consequence flowing "definitely, immediately, and automatically from the guilty plea." *Id.* (quotation omitted). Therefore, appellant was not entitled to notice that pleading guilty to violating an OFP could give rise to the extension of an OFP as a collateral consequence.

## Process Regarding the Children

Appellant argues that the process accompanying the 50–year OFP extension was insufficient because, with regard to the children, no specific showing of abuse was required. We disagree.

 Appellant has a fundamental liberty interest in the care and custody of his children. *In re Welfare of H.G.B.*, 306 N.W.2d 821, 825 (Minn.1981). "The failure to grant a parent an opportunity to be heard on custody issues is a denial of equal protection and due process." *Halverson ex rel. Halverson v. Taflin*, 617 N.W.2d 448, 451 (Minn.App.2000) (citing *Stanley v. Illinois*, 405 U.S. 645, 657–58, 92 S.Ct. 1208, 1215–16, 31 L.Ed.2d 551 (1972)). But we have upheld the Minnesota Domestic Abuse Act against due process challenges because the act includes "extensive procedural protections that guard against erroneous deprivation of parental rights." *Id.* (quotation omitted).

Appellant's complaints arise not from the denial of these protections, but from his refusal to take advantage of them. Each time respondent sought an OFP against appellant that included their children, appellant agreed to the OFP. As a result, appellant removed from the district

court's consideration the issue of whether he had abused respondent or the children. In addition, he had the opportunity to introduce evidence or witnesses regarding the children's best interests at the 2010 hearing on respondent's motion to extend the OFP for 50 years, but instead focused his evidence on challenging respondent's factual allegations.

The 2008 OFP also offered appellant the opportunity to eliminate the no-contact provision as to his children and regain his parenting time by completing individual therapy. And although he failed to take advantage of this opportunity, the extended OFP continues to make that option available. Finally, even if appellant does not petition the district court for parenting time, he may escape the OFP's prohibition on contact with his children in five years by petitioning for modification of the OFP. *See* Minn.Stat. § 518B.01, subd. 11(b). Because appellant was granted all of the procedural protections under the act, he has not been deprived of due process.

## Excluded Evidence

 Appellant claims that he was denied due process because he was not allowed to testify or call witnesses at the hearing on respondent's motion to extend the OFP. We disagree.

Appellant made an offer of proof concerning three witnesses, including himself, all of whom would have refuted factual allegations in respondent's affidavit and petition that appellant had initiated contact with her in violation of an existing OFP. But these factual claims were not at issue at the extension hearing because respondent confined her evidence to appellant's OFP violations, evidenced by his convictions, and his recent release from incarceration. *See* Minn.Stat. § 518B.01, subd. 6a(a)(1), (4), 6a(b). Thus, the proffered evidence was irrelevant to the district

court's consideration of whether to extend the OFP for 50 years. *See id.*, subd. 6a(b) (stating required finding for OFP to extend 50 years).

We conclude that the district court was within its discretion to exclude appellant's witnesses as irrelevant because they were offered solely to refute allegations no longer at issue. *See Kroning v. State Farm Auto. Ins. Co.*, 567 N.W.2d 42, 45–56 (Minn.1997) (stating that the admission or exclusion of evidence rests within the sound discretion of the district court).

### III.

■ Appellant argues that the 50–year OFP extension constitutes double jeopardy because by extending the current OFP based on his prior OFP violations, the district court improperly punished him for the *"same conduct* for which he was already convicted and punished." We disagree.

■ The prohibition against double jeopardy finds its origin in both the Minnesota and United States Constitutions. U.S. Const. amend. V; Minn. Const. art. I, § 7. The Double Jeopardy Clause "does not prohibit the imposition of all additional sanctions that could, 'in common parlance,' be described as punishment." *Hudson v. United States*, 522 U.S. 93, 98–99, 118 S.Ct. 488, 493, 139 L.Ed.2d 450 (1997) (quoting *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 549, 63 S.Ct. 379, 387, 87 L.Ed. 443 (1943)) (quotation omitted). "The Clause protects only against the imposition of multiple *criminal* punishments for the same offense...." *Id.* at 99, 118 S.Ct. at 493.

In *State v. Hanson*, the Minnesota Supreme court adopted the "solely deterrent/retributive" test for purposes of double-jeopardy analysis, which "permits the imposition of a civil sanction that can 'fairly be characterized as remedial.'" 543

N.W.2d 84, 87–88 (Minn.1996) (quoting *United States v. Halper*, 490 U.S. 435, 448–49, 109 S.Ct. 1892, 1902, 104 L.Ed.2d 487 (1989)). After *Hanson* was decided, the United States Supreme Court disavowed the *Halper* analysis and reaffirmed its earlier double-jeopardy analysis. *Hudson*, 522 U.S. at 98–103, 118 S.Ct. at 493–95.

Under the *Hudson* standard, "[t]he initial inquiry into whether a particular punishment is civil or criminal is a matter of statutory construction." *State v. McKinney*, 575 N.W.2d 841, 843 (Minn.App.1998). "We must consider whether the legislature indicated on the face of the statute that the penalty was criminal or civil." *Id.* Even where the legislature has indicated an intention to establish a civil penalty, we may inquire "whether the statutory scheme was so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty." *Id.* at 844 (quotations omitted). We have adopted the following factors to be used as guideposts in conducting this inquiry:

> (1) 'Whether the sanction involves an affirmative disability or restraint'; (2) 'whether it has historically been regarded as a punishment'; (3) 'whether it comes into play only on a finding of scienter'; (4) 'whether its operation will promote the traditional aims of punishment-retribution and deterrence'; (5) 'whether the behavior to which it applies is already a crime'; (6) 'whether an alternative purpose to which it may rationally be connected is assignable for it'; and (7) 'whether it appears excessive in relation to the alternative purpose assigned.'

*Id.* (quoting *Hudson*, 522 U.S. at 99–100, 118 S.Ct. at 493 (quoting *Kennedy v. Men-*

*doza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 567–68, 9 L.Ed.2d 644 (1963))).

Here, we conclude that appellant's double-jeopardy claim fails under either the *Hanson* "solely deterrent/retributive" test or the *Hudson* "civil/criminal" test. The Minnesota Supreme Court has recognized that the Minnesota Domestic Abuse Act was enacted to protect victims of domestic assault. *Burkstrand v. Burkstrand,* 632 N.W.2d 206, 211 (Minn.2001). In light of that purpose, this court has frequently noted that the act is remedial in nature. *E.g., Swenson v. Swenson,* 490 N.W.2d 668, 670 (Minn.App.1992). Thus the *Hanson* test is met.

Applying the *Kennedy* factors as adopted in *Hudson,* only one factor supports a conclusion that an OFP extension is a criminal sanction because it constitutes an affirmative restraint: appellant is restrained to the extent his movements and conduct interfere with the safety and privacy of respondent and the children. One factor appears neutral, because although an OFP extension is intended to deter abuse, its purpose is primarily remedial rather than retributive. The remaining factors support the conclusion that subdivision 6a(b) is civil. OFPs are intended to protect domestic abuse victims, not to punish abusers, and are not excessive in relation to that goal. Accordingly, OFPs have not been regarded as a form of punishment.

Finally, an OFP may be extended on the basis of conduct that is not criminal and scienter is not required for an extension. Therefore, we conclude that an OFP extension is a civil sanction and is not so punitive as to be transformed into a criminal sanction. Because the OFP extension is not a criminal punishment, appellant's double-jeopardy claim fails.

## IV.

Appellant argues that the 50–year OFP extension violates the prohibition against ex post facto laws, which both the Minnesota and United States Constitutions prohibit. *See* U.S. Const. art. I, § 10; Minn. Const. art. I, § 11. A statute constitutes an ex post facto law when it: "(1) punishe[s] as a crime an act which was innocent when committed; (2) increase[s] the burden of punishment for a crime after its commission; or (3) deprive[s] one charged with a crime of a defense that was available when it was committed." *State v. Manning,* 532 N.W.2d 244, 247 (Minn.App. 1995) (citing *Collins v. Youngblood,* 497 U.S. 37, 52, 110 S.Ct. 2715, 2724, 111 L.Ed.2d 30 (1990)), *review denied* (Minn. July 20, 1995).

The provision permitting a 50–year extension became effective on July 1, 2008. 2008 Minn. Laws ch. 316, § 2, at 1216–17. The extension here was granted on September 3, 2010, but was based almost entirely on events that predated the effective date of subdivision 6a(b). Although appellant's most recent conviction for violating an OFP was entered two days after the 50–year extension provision went into effect, the conduct that led to the conviction took place before the 50–year extension provision was effective.

Appellant argues that the OFP extension punishes, as a crime, conduct that was legal when committed. This argument fails. First, the OFP extension does not criminalize his past behavior; it establishes restraints on future behavior based on his past criminal convictions. *See State v. Harrington,* 504 N.W.2d 500, 503 (Minn. App.1993) (rejecting an ex post facto challenge to a harassment restraining order because "[a]lthough the *restraining order* was *based* on events occurring before enactment of [the statute], the restraining order did not *apply* to events occurring

before the enactment"), *review denied* (Minn. Sept. 30, 1993). Second, the district court issued the OFP extension because appellant's contact with his ex-wife *was* criminal when it was committed under OFPs that existed at the time.

Appellant also argues that because the 50–year extension provision became effective after the date of his last OFP violation, it increases the burden of punishment for a crime after it was committed. We disagree.

■ In determining whether a statute increases the burden of punishment, courts look to whether the statute is punitive or regulatory. *Manning,* 532 N.W.2d at 247. To determine whether a statute's effect is punitive, we consider the same factors used to determine whether a penalty is so punitive as to be criminal for double-jeopardy purposes. *See Manning,* 532 N.W.2d at 247 (applying the *Kennedy* factors in an ex post facto challenge to a sex-offender-registration statute). Because we concluded above that subdivision 6a(b) is civil in nature, we also conclude that it is regulatory, and we reject appellant's ex post facto claim.

## V.

■ Appellant argues that the district court erred in construing subdivision 6a(b) not to require a showing of abuse before issuing a 50–year extension. Statutory interpretation is a question of law, which this court reviews de novo. *Peterson v. Johnson,* 755 N.W.2d 758, 761 (Minn.App.2008).

A petitioner seeking an OFP "shall allege the existence of domestic abuse" and provide "an affidavit made under oath stating the specific facts and circumstances from which relief is sought." Minn.Stat. § 518B.01, subd. 4(b). Thus, to obtain an OFP, a petitioner must show "present harm, or an intention on the part of [the responding party] to do present harm."

*Kass v. Kass,* 355 N.W.2d 335, 337 (Minn. App.1984).

But after an OFP has initially issued, a district court may extend the duration of the OFP for up to 50 years if the court finds that "(1) the respondent has violated a prior or existing order for protection on two or more occasions; or (2) the petitioner has had two or more orders for protection in effect against the same respondent." Minn.Stat. § 518B.01, subd. 6a(b). The statute does not require a showing of abuse for an extension of any duration. Moreover, the statute specifically states that "[a] petitioner does not need to show that physical harm is imminent to obtain an extension or a subsequent order under [subdivision 6a(a) ]." *Id.,* subd. 6a(a).

Appellant argues that here the abuse requirement in subdivision 4(b) must be read into subdivision 6a(b) because there has never been a finding of abuse against him and it is unjust to extend the OFP for 50 years without such a showing. We disagree.

■ When the language of a statute is clear, we are bound to follow its plain meaning. *Brua v. Minn. Joint Underwriting Ass'n,* 778 N.W.2d 294, 300 (Minn. 2010). Subdivision 6a(b) does not differentiate the grounds for obtaining an extension for up to 50 years of an OFP that was originally obtained by agreement. Where the legislature has not provided such a distinction, we cannot supply it. *Hutchinson Tech., Inc. v. Comm'r of Revenue,* 698 N.W.2d 1, 8 (Minn.2005). Moreover, by agreeing to the prior OFPs, appellant obtained the benefit of avoiding unfavorable findings. He cannot now invoke that choice against respondent to avoid the extension.

Appellant also argues that the language of Minn.Stat. § 518B.01, subd. 11(b), permitting the district court to modify or va-

cate a lengthy extension provision without a showing of abuse makes no sense because the bases for the district court to grant an extended-duration OFP—multiple violations of an OFP and multiple OFPs against respondent—are static and never subject to change. We disagree.

The standard for a modification or vacation under subdivision 11(b) is whether "there has been a material change in circumstances and that the reasons upon which the court relied in granting or extending the order for protection no longer apply and are unlikely to occur." Thus, appellant can demonstrate changed circumstances by not violating the OFP in the future, attending individual therapy, restoring his parenting time with his children, and otherwise demonstrating that he is not likely to harm respondent or the children.

## DECISION

Appellant's First Amendment and due process rights were not violated. And the extension of an OFP based on appellant's prior OFP violations did not violate the Double Jeopardy or Ex Post Facto Clauses. Finally, because the district court properly interpreted Minn.Stat. § 518B.01, subd. 6a(b), to not require a showing of abuse before issuing an extension, the district court did not err in denying appellant's motion to vacate.

**Affirmed.**