*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A11-1930, A11-1931**

State of Minnesota,
Respondent,

vs.

Steven Robert Latham,
Appellant.

**Filed November 24, 2014
Affirmed
Hudson, Judge**

Dakota County District Court
File Nos. 19-AV-CR-11-10412, 19-AV-CR-11-6798

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael E. Molenda, Christine J. Cassellius, Ryan J. Bies, Dougherty, Molenda, Solfest, Hills & Bauer, P.A., Apple Valley, Minnesota (for respondent)

Michelle L. MacDonald, MacDonald Law Firm, LLC, West St. Paul, Minnesota (for appellant)

Considered and decided by Hudson, Presiding Judge; Peterson, Judge; and Schellhas, Judge.

## U N P U B L I S H E D   O P I N I O N

**HUDSON**, Judge

This matter is on remand from the Minnesota Supreme Court, for reconsideration of the First Amendment issue in light of *Rew v. Bergstrom*, 845 N.W.2d 764 (Minn.

2014).  *See State v. Latham*, Nos. A11-1930, A11-1931, 2012 WL 3792209 (Minn. App. Sept. 4, 2012), *rev'd and remanded* (Minn. June 17, 2014).  The parties have filed supplemental briefs.  On reconsideration in light of *Rew*, we conclude that the harassment restraining order (HRO) prohibiting appellant from contacting his ex-wife does not violate the First Amendment because the no-contact provision is content-neutral, the no-contact provision does not burden any more speech than necessary, and the government has a significant interest in protecting individuals from unwanted contacts where there is a demonstrated history of harassing conduct.  We therefore affirm appellant's convictions.

## FACTS

This appeal was taken from appellant's misdemeanor convictions of violating an HRO and disorderly conduct.  The cases were consolidated on appeal.  Appellant raised numerous issues in his principal brief, including constitutional challenges to Minn. Stat. § 609.748, subds. 4, 5 (2010), which permits a district court to issue a temporary restraining order (TRO) and an HRO directing a respondent to have no contact with a particular person.  Specifically, appellant challenged these subdivisions on the grounds that they were:  (1) facially overbroad; (2) vague; and (3) in violation of his due process rights.  Appellant also raised issues involving evidentiary error, judicial misconduct, and prosecutorial misconduct.  This court considered all of these issues in our unpublished opinion, *Latham*, 2012 WL 3792209.[1]  Because appellant was not convicted of violating

---

[1] A more detailed statement of the facts is included in this opinion.  *Latham*, 2012 WL 3792209 at * 1-2.

2

section 609.748 when he pleaded guilty to disorderly conduct, and a guilty plea by a counseled defendant waives all non-jurisdictional defects, this court did not consider these issues with respect to appellant's disorderly conduct conviction. *See id.* at *7; *see also State v. Miller*, 849 N.W.2d 94, 99 (Minn. App. 2014). The supreme court granted further review and stayed all proceedings pending final disposition in *Rew*, 845 N.W.2d 764. After the supreme court issued its opinion in *Rew*, the supreme court vacated the stay, denied review on all issues except the First Amendment issue, and remanded to this court for reconsideration in light of *Rew*.

### D E C I S I O N

This court's "duty on remand is to execute the mandate of the remanding court strictly according to its terms." *Bauerly v. Bauerly*, 765 N.W.2d 108, 110 (Minn. App. 2009) (quotation omitted). The scope of the supreme court's remand order is limited to addressing the application of *Rew* to this court's opinion in *Latham*.

In *Rew*, the supreme court considered "the legality of a district court's extension for up to 50 years of an order for protection (OFP) in favor of a victim of domestic abuse and her minor children." 845 N.W.2d 764, 771 (Minn. 2014). After Rew and Bergstrom divorced, Rew obtained a series of OFPs against Bergstrom, which Bergstrom violated. *Id.* at 771-72. Eventually, Rew applied for an extension of the expiration date of the OFP for up to 50 years, under Minn. Stat. § 518B.01, subd. 6a (2012). *Id.* at 772. The district court found that Rew established the criteria for extending the OFP and granted the application, with additional conditions in the order prohibiting Bergstrom from coming within 120 yards of Rew's residence, workplace, or church, suspending Bergstrom's

3

parenting time until he and the children completed therapy, excluding Bergstrom from calling or coming within 120 yards of the children's school or childcare, and creating a buffer zone requiring Bergstrom to stay 50 yards away from Rew and the children in all public places. *Id.* at 773–74. Bergstrom challenged the constitutionality of the extended OFP on First Amendment, double jeopardy, ex post facto, equal protection, and due process grounds. *Id.* This court rejected these claims, and the supreme court granted review. *Id.* (*citing Rew ex rel. T.C.B. v. Bergstrom*, 812 N.W.2d 832 (Minn. App. 2011)).

With respect to the constitutional claims, the supreme court considered whether the extension of an OFP under Minn. Stat. § 518B.01, subd. 6a, for 50 years violates the First Amendment to the United States Constitution or Article I, Section 3, of the Minnesota Constitution, which are "coextensive." *Id.* at 776. In considering Bergstrom's claim that the statute is facially unconstitutional and as applied to him, the supreme court first considered whether the statute is a prior restraint on speech. *Id.* The supreme court noted that, "[A]lthough an OFP satisfies the general definition of a prior restraint because it prohibits, by judicial order, certain communications before they occur," not all injunctions are prior restraints. *Id.* The supreme court concluded that the OFP was not a prior restraint because the OFP only prohibited Bergstrom from "express[ing] his views to Rew or the minor children." *Id.* at 777. Additionally, because an OFP is issued based on a person's prior unlawful conduct, not on the content of any particular message the person wishes to express, it prohibits contact regardless of the content of speech. *Id.*

After concluding that the OFP statute is not a prior restraint on speech, the supreme court determined that "the proper test for evaluating content-neutral injunctions

4

under the First Amendment is the test from *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 114 S. Ct. 2516 (1994). *See id.* This was the same standard this court had used to evaluate Bergstrom's claim. *See Rew*, 812 N.W.2d at 833 (declining to apply the heightened prior-restraint standard to 50-year OFP and applying *Madsen* test).

In *Madsen*, the Supreme Court considered the constitutionality of an injunction prohibiting antiabortion protesters from demonstrating outside of a clinic that performs abortions. 512 U.S. at 757, 114 S. Ct. at 2521. The Supreme Court concluded that strict scrutiny did not apply because "[a]n injunction, by its very nature, applies only to a particular group (or individuals) and regulates the activities, and perhaps the speech, of that group . . . because of the group's past actions in the context of a specific dispute between real parties." *Madsen*, 512 U.S. at 762, 114 S. Ct. at 2523. After noting that the protestors "are not prevented from expressing their message . . .; they are simply prohibited from expressing it within the 36-foot buffer zone," the Court concluded that the injunction did not require heightened scrutiny because it did not impose restrictions based on the content of the message. *Id.* at 763–64, 114 S. Ct. at 2524. Because injunctions are different from ordinances and statutes in that they "are remedies imposed for violations (or threatened violations) of a legislative or judicial decree," and "carry greater risks of censorship and discriminatory application," the Court adopted a "somewhat more stringent application of general First Amendment principles." *Id.* at 764–65, 114 S. Ct. at 2524–25. The Supreme Court held that the standard for evaluating a content-neutral injunction is "whether the challenged provisions of the injunction burden no more speech than necessary to serve a significant government interest." *Id.*

5

Under this standard, the Court concluded that "the noise restrictions and the 36-foot buffer zone around the clinic entrances and driveway . . . burden no more speech than necessary to eliminate the unlawful conduct targeted by the State court's injunction." *Id.* at 776, 114 S. Ct. at 2530.

The Minnesota Supreme Court applied the *Madsen* standard to the 50-year OFP statute in *Rew*. The supreme court held that an OFP issued under the statute does not facially violate the First Amendment because it does not burden more speech than necessary, the OFP's restriction on Bergstrom's speech to Rew, a victim of domestic abuse, is not unconstitutional, and the restrictions on Bergstrom's contact with Rew satisfy *Madsen* because the incidental restriction on speech is no greater than necessary to satisfy the state's interest in protecting Rew. *Rew*, 845 N.W.2d at 778–81. But because the OFP restricting contact with the parties' minor children until the children reach 18 years of age lacked sufficient evidence in the record, the supreme court reversed and remanded for further findings as to whether the provisions burdening Bergstrom's speech to his children are necessary to serve a significant state interest. *Id.* at 782–85.

Having clarified the appropriate standard for evaluating whether an injunction prohibiting contact violates the First Amendment in *Rew*, the supreme court directed this court to apply that standard to this case. First, this court already concluded that Minn. Stat. § 609.748, subds. 4, 5, authorizing an HRO prohibiting contact, does not implicate the First Amendment. *Latham*, 2012 WL 3792209 at *4. *Rew* and *Madsen* do not alter this conclusion. Indeed, they support it because an HRO, like an OFP, is issued based on prior unlawful conduct. 845 N.W.2d at 777. As discussed in *Rew* and *Madsen*,

6

injunctive orders do not prohibit a person from expressing ideas, rather, the orders only prohibit expressing ideas to a particular person based on past conduct. *Id.* Further, an order prohibiting all contact is content neutral because it does not identify or prohibit any particular type of speech but is designed to protect privacy and safety. *See id.*; *see also* Aaron H. Caplan, *Free Speech and Civil Harassment Orders*, 64 Hastings L. J. 781, 838–39, 842 (2013) (discussing whether civil harassment statutes are content neutral).

Next, we consider appellant's facial challenge to a content-neutral injunction under the *Madsen* standard. Like an OFP, the government has a significant public-safety interest in permitting district courts to issue HROs prohibiting contact with particular persons where there is a history of unlawful conduct. *Rew*, 845 N.W.2d at 779; Caplan, *supra*, at 840 (noting public safety is important government interest in civil harassment orders). For example, an OFP is issued where there is a history of domestic violence, and an HRO is issued where there is a history of harassing conduct. Minn. Stat. § 609.748, subd. 2 (providing that person who is victim of harassment may seek restraining order). The no-contact provision in subdivisions 4, 5, and in a TRO/HRO issued according to these subdivisions, only prohibits appellant from having contact with his former spouse, who was the target of appellant's prior harassing conduct, and does not include their children. Because it prohibits contact only, it does not burden any more speech than necessary to serve the government's interest in protecting the safety and privacy of a victim of harassing conduct.

With respect to the as-applied challenge, *Rew* instructs that the reviewing court apply *Madsen* "in the context of the specific circumstances presented by this case." *Rew*,

7

845 N.W.2d at 780. As respondent points out, the record does not contain the petition for a harassment restraining order, but there is an unpublished opinion affirming appellant's challenge to the issuance of the HRO, which states that it was issued because

> appellant followed, pursued, or stalked respondent at the office of the children's orthodontist and at parenting-time exchanges, that appellant made harassing phone calls to respondent by multiple repeat calls without leaving a message, that appellant frightened respondent with threatening behavior by yelling and using angry expressions during parenting-time exchanges, and that appellant called respondent's family members to accuse her of various matters.

*Latham v. Latham*, No. A11-1085, 2012 WL 686117 at *1 (Minn. App. Mar. 5, 2012). The TRO/HRO prohibits appellant from having contact with his former spouse only. The order does not burden any more speech than necessary to achieve the goal of prohibiting contact where appellant has demonstrated that his prior contacts with his former spouse have resulted in harassing and threatening behavior.

Appellant argues that the *Madsen* standard was called into question by a recent Supreme Court opinion, *McCullen v. Coakley*, which involves a challenge to a Massachusetts statute that created a 35-foot buffer-zone requirement around an abortion clinic. 134 S. Ct. 2518, 2525-26 (2014). Because *McCullen* involves the constitutionality of a statute, which is the standard articulated in *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S. Ct. 2746, 2753–54 (1989), it does not alter the holding in *Madsen*, which articulated the standard for reviewing an injunction. *See Madsen*, 512 U.S. at 764–65, 114 S. Ct. at 2524–25. Therefore, *McCullen* is inapposite.

8

After applying the *Madsen* standard adopted in *Rew* for evaluating a content-neutral injunction, we conclude that the TRO/HRO issued pursuant to section 609.748, subdivisions 4, 5, does not burden more speech than necessary to serve a significant government interest in protecting individuals from unwanted contacts where there is a demonstrated history of harassing conduct.

**Affirmed.**