STATE of Minnesota, Appellant,

v.

James Howard DeROSIER,
Respondent.

No. A03–1718.

Supreme Court of Minnesota.

June 29, 2006.

Rehearing Denied Aug. 29, 2006.

Stephen V. Grigsby, Robert D. Miller, Minneapolis, MN, for Respondent.

Mike Hatch, Minnesota Attorney General, Thomas Ragatz, Saint Paul, MN, Thomas Murtha, Aitkin County Attorney, Aitkin, MN, for Appellant.

## O P I N I O N

HANSON, Justice.

Respondent James DeRosier was convicted of criminal sexual conduct in the first degree in violation of Minn.Stat. § 609.342, subds. 1(b), 2(a) (2000), for having sex with a victim who was 15 years old when DeRosier was 49 years old and in a position of authority over the victim. At trial, the victim testified to sexual encounters that occurred over the months of June, July, and August of 2000, but the jury simply found DeRosier guilty of first-degree criminal sexual conduct without determining the specific date or dates of the offense. On August 1, 2000, the presumptive sentence for criminal sexual conduct in the first degree changed from 86 months to 144 months in prison. The judge sentenced DeRosier to 144 months in prison using the presumptive sentence applicable after August 1, 2000. On appeal, DeRosier argued that the jury had not clearly found that DeRosier had sex with the victim after August 1, 2000, and therefore his sentence was in violation of *Blakely v. Washington* because the use of the increased presumptive sentence depended on the determination of disputed facts not found by a jury. The court of appeals reversed DeRosier's sentence as violative of *Blakely* and remanded to the district court for resentencing. We affirm.

N.P. moved to Aitkin County with her family in 1999, when she was approximately 14 years old. Her family became friendly with respondent DeRosier, a local man who was in the same line of business as N.P.'s mother. In 2000, N.P. babysat DeRosier's two young children and then began helping him run his livestock auctions, for which DeRosier paid her in cash. N.P. stated that she often accompanied DeRosier on driving trips to pick up items for the auction. N.P. testified that while in the beginning, DeRosier struck up innocent conversations with her, he soon began introducing increasingly sexual topics.

Finally, N.P. testified that one evening after an auction, DeRosier gave her beer and ultimately had sex with her in his car. N.P. testified that after this initial encounter, she and DeRosier had sex regularly after the auctions, about seven to ten times per month.

N.P. stated the sexual encounters began in June 2000 and that she knew "for sure" that one sexual encounter took place in

August because she connected it to the time her grandmother was visiting from California. N.P. also testified that DeRosier told her that "nobody could ever find out" about their relationship because "[h]e would end up going to jail and he would never be able to see his kids again."

At some point before her 16th birthday (November 16, 2000), N.P. discovered that she was pregnant. N.P. testified that she knew DeRosier was the father because he was the only person with whom she had ever had sex. A DNA test indicated that the probability was 99.99% that DeRosier was the father of N.P.'s baby. Based on the newborn exam, the date of birth, the ultrasound, and the date of N.P.'s last menstrual period, N.P.'s doctor testified that N.P.'s baby was conceived in June 2000.

At the end of trial, the judge instructed the jury that in order to find DeRosier guilty of first-degree criminal sexual conduct, they were required to find "that [DeRosier's] act took place on or about June, July, or August 2000 in Aitkin County." Neither DeRosier nor the state requested that the jury determine the specific date or dates of the offense(s). The jury found DeRosier guilty of criminal sexual conduct in the first degree and the court entered judgment of conviction. At sentencing, the judge stated that the presumptive sentence was 144 months and imposed that sentence. DeRosier did not object to the judge's statement that 144 months was the presumptive sentence, and did not raise any issue concerning the date of the offense.

DeRosier appealed his conviction to the court of appeals, but then requested and was granted a stay of appeal in order to file a petition for post-conviction relief with the district court. In that petition, DeRosier sought to lower his sentence from 144 months to 86 months on the basis that in June and July of 2000 the presumptive sentence for his crime was 86 months, not 144 months, and that the presumptive sentence was raised to 144 months only in August.

The post-conviction petition, which was filed on May 6, 2004, was not based on *Blakely*, which was released on June 24, 2004. The district court's decision, filed August 10, 2004, also did not refer to *Blakely*. The district court concluded, on the basis of this court's pre-*Blakely* case law, that a reduction in DeRosier's sentence would only be appropriate if "there is no reasonable likelihood that all of [DeRosier's] acts" occurred before August 1, 2000. Because the victim had testified that DeRosier had engaged in sexual intercourse with her in August of 2000, the district court denied DeRosier's request for a reduction in sentence.

The court of appeals reversed and remanded for resentencing. That court first stated that under pre-*Blakely* Minnesota law, when a crime requiring only a single offense occurs on an unspecified date within a specified time period, a defendant has the right to have a jury decide the date of the offense. The court held that while this right under Minnesota case law is forfeited if the defendant fails to request a special interrogatory verdict, a defendant's *Blakely* rights can only be waived if the waiver is knowing, intelligent, and voluntary. The court concluded that DeRosier's *Blakely* rights were implicated here, because the judge's determination that DeRosier's offense took place in August of 2000 led to the imposition of a higher sentence than was necessarily supported by the jury's verdict. The court noted that:

> [I]n these circumstances, placing the burden on the defendant to request a special interrogatory asking the jury to determine the date of the offense conflicts with the holding of *Blakely*. Un-

der *Blakely*, a defendant has the right to a jury determination of any facts that extend the duration of the sentence, and the burden is on the state, not the defendant, to prove these facts.

## I.

■ Our first task is to determine whether *Blakely* applies to a situation where the presumptive sentence depends on a date not precisely found by the jury. Because the presumptive sentence for first-degree criminal sexual conduct changed from 86 months to 144 months on August 1, 2000, if DeRosier had sex with N.P. in June or July but not August, the presumptive sentence would have been 86 months, not 144 months. DeRosier argues that the district court finding that one of the sexual encounters occurred in August was akin to an upward departure and thus was made in violation of *Blakely* because it was made by the court without a jury. The state argues that *Blakely* may not apply because "[u]nlike *Blakely*, this case does not involve a factual finding that increases the 'statutory maximum' sentence * * *, but rather involves a factual finding that determines which 'statutory maximum' applies, the pre-August 1, 2000 presumptive sentence or the post-August 1, 2000 presumptive sentence."

The sentencing challenge here is based on a legal issue that we review de novo. *State v. Barker*, 705 N.W.2d 768, 771 (Minn.2005). In *Blakely*, the United States Supreme Court held that a court could not impose a sentence above the statutory maximum on the basis of facts not found by a jury, as that would be a violation of the defendant's right to trial by jury. *Blakely v. Washington*, 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The Court said:

[T]he "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.

*Id.* at 303–04, 124 S.Ct. 2531 (citations omitted). In a subsequent case, *Shepard v. United States*, the Court elaborated on the jury determination requirement: "the Sixth and Fourteenth Amendments guarantee a jury standing between a defendant and the power of the state, and they guarantee a jury's finding of *any disputed fact essential to increase the ceiling of a potential sentence.*" 544 U.S. 13, 25, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005) (emphasis added).

If the determination of which presumptive sentence applies depends on a fact issue, *Blakely* and *Shepard* suggest that such an issue is for the jury to decide. Here, the district court independently decided that at least one of DeRosier's sexual offenses occurred after August 1, 2000, and, based on that decision, sentenced DeRosier to a longer sentence than the pre-August presumptive sentence. We agree with the court of appeals that *Blakely* applies to this situation and that the district court's independent determination of the date of the defendant's offense is a violation of *Blakely*.

## II.

■ The state argues that even if the sentence is a *Blakely* violation, DeRosier forfeited his *Blakely* objection because he did not ask for the jury to determine the date of his offense. The state alleges that DeRosier had the settled right under Minnesota law at the time of the trial to ask for the jury to determine the date of his offense, but he did not do so. The

state relies on our pre-*Blakely* case law that, although a defendant has the right to have the jury determine the date of his offense, *State v. Robinson,* 480 N.W.2d 644, 646 (Minn.1992), a defendant must exercise that right by requesting a special interrogatory and waives the right by failing to do so, *State v. Murray,* 495 N.W.2d 412–13 (Minn.1993).

DeRosier argues that any waiver of *Blakely* rights must be knowing, intelligent, and voluntary. DeRosier suggests that a failure to ask the jury to determine the date of the offense does not constitute a knowing, intelligent, and voluntary waiver of his *Blakely* rights. He argues that "waiver cannot be inferred from facts in the record, nor implied from the circumstances but it must be * * * 'express, intelligent consent.' "

Normally, a district court error not objected to at trial is deemed forfeited. *See, e.g., State v. Jones,* 678 N.W.2d 1, 22 (Minn.2004); *State v. Baird,* 654 N.W.2d 105, 113 (Minn.2002). But the outcome here is controlled by our recently released opinion in *State v. Osborne,* 715 N.W.2d 436, 2006 WL 1549940 (Minn.2006). In *Osborne,* we concluded that the right to a jury trial under *Blakely* may not be forfeited by silence. *Id.* at 442, 2006 WL 1549940 at *4. Our decisions in *Robinson* and *Murray* do not limit DeRosier's rights under *Blakely*. Accordingly, we conclude that DeRosier did not forfeit his *Blakely* rights for purposes of this appeal.

### III.

As we stated in *Osborne,* it is uncertain whether the Supreme Court intended *Blakely* violations to be regarded as structural errors, requiring reversal regardless of prejudice. *Id.* at 447 n. 8, 2006 WL 1549940 at *10 n. 8. Therefore, we examine the *Blakely* violation in this case under a harmless error standard. An er-

ror is not harmless if there is any reasonable doubt the result would have been different if the error had not occurred. *See State v. Naylor,* 474 N.W.2d 314, 319–20 (Minn.1991). Here, if the district court had not implicitly found that DeRosier had a sexual encounter with the victim after August 1, DeRosier's sentence would have been 58 months shorter. This is clearly a different—and prejudicial—result. Therefore, the error was not harmless.

Affirmed.

ANDERSON, PAUL H., Justice (concurring).

I agree with the result reached by the majority, but disagree with the majority's analysis as to Issues I and II. *See State v. Osborne,* 715 N.W.2d 436, 448–52, 2006 WL 1549940, at *10–14 (Minn.2006) (Anderson, Paul H., J., concurring specially).

ANDERSON, G. BARRY, Justice (concurring).

I join in the concurrence of Justice Paul H. Anderson.