*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0624**


State of Minnesota,
Respondent,

vs.

Eric Tyler Schwappach,
Appellant.


**Filed April 11, 2016
Affirmed
Halbrooks, Judge**


Ramsey County District Court
File No. 62-CR-14-211

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Adam E. Petras, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jessica Merz Godes, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Halbrooks, Presiding Judge; Bjorkman, Judge; and

Kalitowski, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HALBROOKS**, Judge

Appellant challenges his convictions of first-degree criminal sexual conduct, arguing that the district court abused its discretion by admitting evidence of his 2007 conviction of fourth-degree criminal sexual conduct as relationship evidence under Minn. Stat. § 634.20 (2014) and as *Spreigl* evidence. Appellant also argues that the district court erred by sentencing him according to the sentencing guidelines effective August 1, 2006, because the jury did not make a specific finding that any of the acts of sexual penetration occurred on or after August 1, 2006. We affirm.

## FACTS

Appellant Eric Tyler Schwappach and C.S. began living together in 2002 and married in 2004. In 2003, C.S.'s four-year-old niece T.S. began living with C.S. and Schwappach. T.S. lived with C.S. and Schwappach until she was eight years old.

Schwappach was T.S.'s primary caregiver during the day because he worked at night, and C.S. worked during the day. When T.S. was in kindergarten, Schwappach began sexually abusing her. Schwappach forced T.S. to rub his penis, perform oral sex on him, and have vaginal intercourse with him. Schwappach forced T.S. to perform these sexual acts about once or twice per week.

In 2007, after he was charged with criminal sexual conduct involving a different victim, Schwappach stopped living with C.S. and moved into an apartment. T.S. continued to live with C.S. After Schwappach moved into his apartment, he contacted T.S.'s biological mother and asked if he could see T.S., stating that he had not seen T.S.

for some time.  T.S. visited Schwappach at his apartment, and Schwappach forced T.S. to perform oral sex on him while she was there.

In 2013, T.S.'s aunt, S.S., observed that T.S. was having behavioral issues and difficulty in school, which led S.S. to suspect that "maybe something happened" between T.S. and Schwappach.  S.S. asked T.S. if Schwappach had ever hurt her, and T.S. replied that Schwappach had sexually assaulted her.  A few days later, S.S. brought T.S. to the police station to report Schwappach.  After taking T.S.'s report, an officer referred her to Midwest Children's Resource Center for a forensic interview.  A pediatric nurse practitioner subsequently interviewed and physically examined T.S.  The nurse discovered a scar on T.S.'s hymen.  According to the nurse, scarring on a female's hymen is very uncommon and is usually associated with forceful penetrating trauma.  The nurse testified that the scarring on T.S.'s hymen could have occurred when T.S. was between the ages of four and eight years old.

The state charged Schwappach with three counts of first-degree criminal sexual conduct.  Schwappach testified at trial and denied ever touching T.S. in a sexual way. The jury found Schwappach guilty of all three counts.  The district court sentenced Schwappach to 216 months in prison, which was the maximum presumptive sentence for Schwappach under the sentencing guidelines effective August 1, 2006.  This appeal follows.

## DECISION

### I.

Schwappach argues that the district court abused its discretion by admitting evidence of his 2007 conviction of fourth-degree criminal sexual conduct. In 2007, D.M.Y., a close family friend whom C.S. used to babysit, stayed overnight at the home of C.S. and Schwappach. Although D.M.Y. was 15 years old at the time, she was developmentally delayed and suffered from depression. Schwappach offered to let D.M.Y. stay at his home because spending time with his children helped to alleviate her depression. While D.M.Y. was staying there, Schwappach invited her to the basement to watch a movie with him and the other children. Schwappach and D.M.Y. sat on a couch together with a blanket covering their laps, and the children sat in a chair adjacent to the couch. Underneath the blanket and out of the other children's sight, Schwappach inserted his fingers inside D.M.Y.'s vagina and moved them around. Schwappach ultimately pleaded guilty to fourth-degree criminal sexual conduct.

The district court allowed the state to introduce this evidence as relationship evidence under Minn. Stat. § 634.20 and as *Spreigl* evidence of a common scheme or plan. Schwappach argues that the district court abused its discretion on both grounds.

We review the admission of *Spreigl* evidence for an abuse of discretion. *State v. Ness*, 707 N.W.2d 676, 685 (Minn. 2006). Schwappach bears the burden of showing the abuse of discretion and any resulting prejudice. *Id.*

"Evidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith." Minn. R. Evid. 404(b). But

4

other-crimes evidence, commonly called *Spreigl* evidence, may be admissible for another purpose, such as to show a common scheme or plan. *Ness*, 707 N.W.2d at 685. The common-scheme-or-plan exception allows "evidence of offenses which, because of their marked similarity in modus operandi to the charged offense, tend to corroborate evidence of the latter." *Id.* at 687-88 (quotation omitted).

Schwappach argues that the prior crime and the charged crime are not markedly similar, noting that the prior crime involved penetrating a 15-year-old girl's vagina with his fingers, whereas the charged crime involved vaginally and orally penetrating a girl between the ages of four and eight years old with his penis. Although the forms of penetration were different, the two crimes were similar in several distinct ways. The district court found that the prior crime helped to show that Schwappach used the same modus operandi during the same time period of his ongoing abuse of T.S., demonstrating that Schwappach "took advantage of his position of authority to sexually abuse each victim." Both crimes occurred in Schwappach's home while he was the only adult present. Both crimes involved underage girls who were staying at Schwappach's home. Neither victim was Schwappach's biological child, but Schwappach was serving in a supervisory role to both victims. And any difference in the victims' age is insignificant due to the fact that D.M.Y. was developmentally delayed.

Schwappach argues that even if the two crimes are markedly similar, the district court should have excluded evidence of the prior crime because its potential for unfair prejudice outweighed its probative value. *Spreigl* evidence is admissible only if "the probative value of the evidence is not outweighed by its potential for unfair prejudice to

5

the defendant." Minn. R. Evid. 404(b). When deciding whether the probative value outweighs the potential for unfair prejudice, the district court should address the state's need for the evidence. *Ness*, 707 N.W.2d at 690.

Here, the district court found that the state's need for the *Spreigl* evidence was high because the fact that an underage victim did not report the crime until years later made it difficult for the state to prove its case. The district court also noted that there was no physical evidence such as DNA or semen linking Schwappach to the crime. The district court concluded that a limiting instruction to the jury would mitigate any potential for unfair prejudice. *See State v. Riddley*, 776 N.W.2d 419, 428 (Minn. 2009) ("We presume a jury follows a court's cautionary instruction."); *State v. Kennedy*, 585 N.W.2d 385, 392 (Minn. 1998) (concluding that reading two standard cautionary instructions to the jury lessened the probability of undue weight being given to the evidence).

Because the two crimes were markedly similar and because the probative value outweighed the potential for unfair prejudice, we conclude that the district court did not abuse its discretion by admitting the prior crime as *Spreigl* evidence. Because evidence of Schwappach's prior crime was admissible as *Spreigl* evidence, we need not decide whether the district court abused its discretion by also admitting it as relationship evidence under Minn. Stat. § 634.20.

## II.

Schwappach argues that the district court erred by sentencing him under the sentencing guidelines effective August 1, 2006, because the jury did not specifically find that any of the acts of sexual penetration of D.M.Y. occurred on or after August 1, 2006.

The district court sentenced Schwappach to 216 months in prison, the maximum presumptive sentence for him under the sentencing guidelines effective August 1, 2006. Under the sentencing guidelines in effect prior to August 1, 2006, the maximum presumptive sentence for Schwappach would have been 146 months.

An offender's presumptive sentence is determined by the sentencing guidelines in effect on the date of the conviction offense. Minn. Sent. Guidelines 2 (2014). In *Blakely v. Washington*, the United States Supreme Court held that the maximum sentence a judge may impose is one based solely on facts admitted by the defendant or reflected in the jury's verdict. 542 U.S. 296, 303, 124 S. Ct. 2531, 2537 (2004). The Minnesota Supreme Court has held that if determining which presumptive sentence to apply depends on a fact issue, *Blakely* requires that the jury must make that factual finding. *State v. DeRosier*, 719 N.W.2d 900, 903 (Minn. 2006). A district court's independent determination of the defendant's offense date constitutes a *Blakely* violation. *Id.* A defendant does not forfeit his rights under *Blakely* by failing to request that the jury determine the issue. *Id.* at 904. We review *Blakely* violations under a harmless-error standard. *State v. Chauvin*, 723 N.W.2d 20, 30 (Minn. 2006). "An error is not harmless if there is any reasonable doubt the result would have been different if the error had not occurred." *DeRosier*, 719 N.W.2d at 904.

The jury here made no specific finding that any of Schwappach's acts of sexual penetration of D.M.Y. occurred on or after August 1, 2006. The jury instructions advised the jury that one of the elements that the state had to prove beyond a reasonable doubt in each crime was that Schwappach's "act took place on or about January 1, 2003 to

7

December 31, 2008 in Ramsey County, Minnesota." The jury's verdict therefore reflects only that Schwappach's crimes took place at some point within that range of dates, which includes a time period prior to August 1, 2006. The district court sentenced Schwappach according to the sentencing guidelines effective August 1, 2006, thereby implicitly finding that Schwappach's offense occurred on or after that date. This was a violation of *Blakely*.

Because a *Blakely* violation occurred here, we must decide whether the error was harmless beyond a reasonable doubt. Schwappach asserts that the only act that occurred after August 1, 2006, was the forced oral penetration at Schwappach's apartment in 2007. Schwappach argues that there was no evidence corroborating T.S.'s testimony about this encounter, so failing to submit that fact question to the jury was not harmless error because the jury may not have found that any acts of sexual penetration occurred after August 1, 2006. The state argues that the error was harmless because it is not reasonable to conclude that the jury disbelieved T.S.'s testimony about the forced oral sex at Schwappach's apartment but believed the rest of her testimony. We agree with the state.

The following evidence presented at trial established that Schwappach sexually penetrated T.S. after August 1, 2006. Schwappach moved into his apartment in 2007, and T.S. testified that Schwappach forced her to perform oral sex on him at his apartment. T.S. also testified that Schwappach sexually penetrated her while they were living in a red house, and Schwappach testified that they lived in a red house from 2006 to 2007. Because it is not reasonable to conclude that the jury believed T.S.'s testimony about acts that occurred before August 1, 2006, but disbelieved her testimony about the

8

forced oral sex at Schwappach's apartment in 2007 and the sexual abuse occurring in the red house, there is no reasonable doubt that the jury would have found that Schwappach sexually penetrated T.S. after August 1, 2006, if the jury had been asked to make such a finding. *See State v. Shamp*, 427 N.W.2d 228, 231 (Minn. 1988) (noting that, when a statute of limitations was at issue, "there is no reasonable likelihood that the jury somehow discredited the victim's testimony relating to abuse occurring after August 1, 1982, but credited her testimony concerning abuse occurring before August 1, 1982").

**Affirmed.**