GILDEA, Chief Justice.
This case involves the calculation of appellant W.C. Washington's criminal history score. Under the Minnesota Sentencing Guidelines, prior felony sentences are used to calculate criminal history scores unless a period of 15 years has elapsed between "the date of the current offense" and the *604 expiration of the prior felony sentence. Minn. Sent. Guidelines 2.B.l(c). Washington argues that "the date of the current offense" for the crime of failure to register as a predatory offender under Minn. Stat. § 243.166 (2016) is the last day the offense occurs. He also argues that a jury, not the district court, has to decide "the date of current offense." The court of appeals concluded that "the date of the current offense," which it determined to be a continuing offense, is the first day the offense occurs. Because we conclude that failing to register is a continuing crime that includes the entire range of dates on which Washington failed to register and that a jury was not required to find the date of Washington's current offense, we affirm.
FACTS
The State charged Washington with failing to register as required in Minn. Stat. § 243.166, subd. 5(a). Specifically, the State charged that "[o]n or about the 9th day of June, 2013 to the 4th day of August, 2015," Washington was required to but did not "register as a predatory offender." Under the predatory-offender-registration statute, at least 5 days before starting to live at a new primary address, a person required to register must "give written notice of the new primary address to the assigned corrections agent or to the law enforcement authority with which the person currently is registered." Id. , subd. 3(b). It is a felony to knowingly violate the provisions of the registration statute. Id. , subd. 5(a).[1]
As of June 9, 2013, Washington reported to law enforcement that he was living at a residence on Larpenteur Avenue in Saint Paul. But on October 27, 2014, Washington was marked non-compliant because he failed to return an annual verification letter the Minnesota Bureau of Criminal Apprehension sent to the registered address on Larpenteur Avenue. Under Minn. Stat. § 243.166, subd. 4(e)(1), Washington was required to sign and return the verification. Washington was familiar with this requirement, having returned two such verification forms between June 9, 2013, and October 27, 2014.
In May of 2015, after becoming aware of Washington's failure to return multiple verification letters, Saint Paul Police officer Lynette Cherry attempted to contact Washington to investigate his registration status. On May 8, 2015, Officer Cherry spoke with the resident of the Larpenteur Avenue residence, who informed her that Washington had never lived with him, although Washington had stayed with him a few times. On May 14, 2015, when Officer Cherry was finally able to contact Washington, he told her that he was currently residing on Douglas Street in Saint Paul. He also informed her that he had previously resided on Winifred Street in Saint Paul, but that he did not register either of these two addresses because he had not received the verification forms.
Respondent State of Minnesota subsequently charged Washington with one count of knowingly failing to comply with the registration requirements, in violation of Minn. Stat. § 243.166, subd. 5(a). The complaint alleged that between June 9, 2013 and August 4, 2015, Washington was subject to, but failed to follow, the statute's registration requirements. Washington *605 waived his right to a trial by jury and the matter proceeded to trial before the court.
The district court found that Washington was required to register as a predatory offender, and that he knew of the requirement. The court also found that Washington knew that he was required to update his primary address as part of his registration, but that he failed to do so. Accordingly, the court concluded that Washington was guilty of one count of knowingly failing to register as a predatory offender, an offense the court found "took place during a period approximately June 9th, 2013, through ... August 4th of 2015 in Ramsey County."
At the sentencing hearing, the district court determined that Washington had a criminal history score of five. This score included the points for Washington's previous failure-to-register convictions, as well as 1.5 criminal history points for his 1996 third-degree criminal-sexual-conduct conviction. Washington agreed that he had a criminal history score of five, and he did not dispute this calculation at sentencing. The district court sentenced Washington to 27 months in prison.
On appeal, Washington challenged only his sentence. He argued that the district court erred in its calculation of his criminal history score by including 1.5 criminal history points for the 1996 conviction, because that conviction "decayed" before his commission of the current offense. State v. Washington , 894 N.W.2d 168, 170-71 (Minn. App. 2017). As the court of appeals noted, "[a] prior felony conviction has decayed if, when 'computing the criminal history score[,] ... a period of fifteen years has elapsed since the date of discharge from or expiration of the sentence to the date of the current offense.' " Id. at 172 (alteration in original) (quoting Minn. Sent. Guidelines 2.B.1(c) ). Washington's 1996 conviction "decayed" under the guidelines on September 23, 2014, because 15 years had passed since the date his sentence expired (September 23, 1999).[2] Washington argued that "the date of the current offense" for failing to register was the last day of the offense, on August 4, 2015. Because his 1996 conviction had decayed before the commission of the current offense, Washington contended that the 1996 conviction could not be used in calculating his criminal history score.
The court of appeals rejected Washington's argument and affirmed the district court's calculation of Washington's criminal history score. Washington, 894 N.W.2d at 170. Concluding that a violation of the predatory-offender-registration statute is a continuing offense, the court stated that construing the sentencing guidelines to "requir[e] that a continuing offense conclude before a prior felony decays would lead to an unreasonable or absurd result." Id. at 172. "Such a result," the court said, "would incentivize continuous offending and penalize those who come into compliance with registration requirements before decay." Id. at 172-73. The court therefore concluded that "[w]hen determining decay, for purposes of calculating criminal-history scores, courts must look to the start date of a continuing offense, not the end date." Id. at 174. Because the date that Washington's sentence for his 1996 conviction expired (September 23, 1999) was less than 15 years from the first date of his current offense (June 9, 2013), the court concluded that the district court properly included the 1996 conviction in its calculation of Washington's criminal history score. Id. at 170. We granted Washington's petition for review.
*606 ANALYSIS
On appeal, Washington argues that the court of appeals erred in determining that "the date of the current offense" for failure to register under Minn. Stat. § 243.166 is the first day the offense occurs. He also asserts that the district court's failure to submit the question of his offense date to a sentencing jury violates his right to a jury trial. We consider each issue in turn.
I.
We turn first to Washington's argument that "the date of the current offense," is the last day of the offense and not, as the court of appeals concluded, the first day. The court of appeals concluded that "the date of the current offense" for a violation of the predatory-offender registration requirements under Minn. Stat. § 243.166 is the date the offense begins. Washington , 894 N.W.2d at 174. The court reached this conclusion because it determined that the crime of failure to register is a continuing offense. Id. at 172. The question of whether an offense is a continuing one involves statutory interpretation that is subject to de novo review. State v. Bakken , 883 N.W.2d 264, 267 (Minn. 2016). Interpretation of the Minnesota Sentencing Guidelines is also a question of law subject to de novo review. State v. Maurstad , 733 N.W.2d 141, 148 (Minn. 2007) (citing State v. Zeimet , 696 N.W.2d 791, 793 (Minn. 2005) ).
We have not addressed whether failing to register is a continuing offense. But we have concluded that other crimes are continuing offenses for purposes of the statute of limitations. See e.g., State v. Banks , 331 N.W.2d 491, 494 (Minn. 1983) (holding that possession of a firearm by an ineligible person is a continuing offense); State v. Lawrence , 312 N.W.2d 251, 253 (Minn. 1981) (holding that "concealing or possessing stolen goods" is a continuing offense); State v. Burnett , 292 Minn. 484, 195 N.W.2d 189, 189 (1972) (holding that "escape is a continuing offense"); State v. Clark , 148 Minn. 389, 182 N.W. 452, 454 (Minn. 1921) (holding that unlawful failure to support dependent children and abandonment of dependent children are both continuing offenses). In each of these cases, our determination that an offense was a "continuing" one turned on whether the language of the statute imposed a "continuing obligation" on the offender. See, e.g., Lawrence , 312 N.W.2d at 253 (holding that the use of the word "possessing" in the receiving-stolen-property statute was intended to "denote a continuing offense"); Clark , 182 N.W. at 454 (concluding that a father has a continuing obligation to support his dependent children).
The predatory-offender-registration statute unquestionably imposes a continuing obligation on those subject to its provisions.[3] Although the language of the predatory-offender-registration statute does not explicitly compel the conclusion that failure to register is a continuing offense, the continuing obligations imposed under the statute do. Specifically, the offender's duties to register with law enforcement and update addresses when an offender moves are continuing obligations that require action from the offender within 5 days before each and every change of residence. See Minn. Stat. § 243.166, subd. 3(b). Every time Washington moved and failed to update his address, and every *607 time he returned his signed verification form knowing that he was not complying with the requirements of the statute, he continuously violated the registration requirements. We therefore agree with the court of appeals that failing to comply or refusing to comply with the registration requirements is a continuing offense.[4]
Having determined that Washington committed a continuing offense when he violated the predatory-offender-registration statute, we must next determine the date of that offense for purposes of Minn. Sent. Guidelines 2.B.1(c). See Minn. Sent. Guidelines 2.B.1(c) ("A prior felony sentence ... must not be used in computing the criminal history score if a period of fifteen years has elapsed since the date of discharge from or expiration of the sentence to the date of the current offense."). Washington argues that the guidelines provision is ambiguous as applied to continuing offenses because it fails to define how the "offense date" for such an offense is determined. Washington asserts that, because there is ambiguity and canons of construction do not resolve the ambiguity, we should resort to the rule of lenity and resolve the ambiguity in his favor. Using lenity, Washington argues, results in the conclusion that the date of his current offense was August 4, 2015, the last date the district court found that he violated the statute. Because the 1996 conviction decayed before that, Washington asserts, the district court erred in including that conviction in the calculation of his criminal history score. The State contends that "the date of the current offense" provision is not ambiguous as it applies to continuing offenses because it is subject to only one reasonable interpretation. We agree with the State.
Washington is correct that the guidelines do not define what is meant by "the date of the current offense." In the absence of a given definition, however, we often consult dictionary definitions to ascertain "the plain and ordinary meaning of words or phrases." Troyer v. Vertlu Mgmt. Co./Kok & Lundberg Funeral Homes , 806 N.W.2d 17, 24 (Minn. 2011). "Date" is defined as "[a] particular point or period of time." The American Heritage Dictionary of the English Language 337 (New College ed. 1982). "Date" then could refer to either a single calendar date or to a range of dates, which could lead to ambiguity. But there is no ambiguity here because the only reasonable interpretation of the *608 guidelines provision is that the entire range of dates over which a continuing crime is committed constitutes "the date of the current offense." See State v. Schmid , 859 N.W.2d 816, 820 (Minn. 2015) (noting that a statute is unambiguous when only one reasonable interpretation exists).
Washington's preferred interpretation-that "the date of the current offense" means only one date-is not reasonable. To adopt this interpretation would mean that Washington committed a new felony every day that he failed to register.[5] A continuing offense, however, is one offense that occurs each and every day until the violation ceases. See Statev. Bakken , 883 N.W.2d 264, 270 (Minn. 2016) ; see also State ex rel. Sargent v. Tahash , 280 Minn. 507, 160 N.W.2d 139, 141 (1968).
But, Washington argues, the term "offense date" in the guidelines is written in the singular, and introduced with a definite article-"the"-thus, reinforcing his interpretation that the guideline provision refers to a single day. We are not persuaded.
We use the "canons of interpretation" from Minn. Stat. § 645.08 (2016) to determine whether a statute is ambiguous. State v. Riggs , 865 N.W.2d 679, 682 (Minn. 2015). And when we interpret the guidelines we use the same principles we use when we interpret statutes. State v. Campbell , 814 N.W.2d 1, 4 (Minn. 2012) (citing State v. Williams , 771 N.W.2d 514, 523 (Minn. 2009) ). Accordingly, we conclude that the canons of interpretation in section 645.08 apply to our interpretation of Minn. Sent. Guidelines 2.B.1(c). According to Minn. Stat. § 645.08(2), "the singular includes the plural." Applying that canon to "the date of the current offense," Minn. Sent. Guidelines 2.B.1(c), reinforces the conclusion that "the date" is not limited to a single day but includes the entire range of dates over which the continuing offense is committed.
Based on this analysis, we conclude that limiting "the date of the current offense" to a single day in the context of a continuing offense is not a reasonable interpretation of the guidelines section at issue here. Rather, the only reasonable interpretation is that "the date of the current offense" is the entire range of dates over which an offender commits a continuing offense. Minnesota Sentencing Guidelines 2.B.1(c) is therefore unambiguous as applied to continuing offenses. When the offense is a continuing one, "the date of the current offense," id. , comprises the entire period of time over which the offender commits the continuing offense.
Here, the district court concluded that period was June 9, 2013, through August 4, 2015. Because 15 years had not elapsed between the expiration of Washington's sentence for his 1996 felony conviction (September 23, 1999) and the start of Washington's current offense (June 9, 2013), we hold that the district court did not err in including Washington's 1996 conviction in his criminal history score.
II.
We turn next to Washington's argument that his sentence violates his Sixth Amendment right to a jury trial under Blakely v. Washington , 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Under Blakely , "any fact [,other than a prior conviction,] that is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must *609 be admitted to by the defendant or proved to a jury beyond a reasonable doubt." State v. Osborne , 715 N.W.2d 436, 440 (Minn. 2006). Because "[t]he offense date ... constitutes a disputed fact essential to calculating the maximum allowable sentence," Washington argues that a jury should have decided the date of his current offense. The State argues that a jury was not required. We agree with the State.
Washington waived his right to a jury trial on the question of guilt and the matter was tried to the court. As part of its determination of Washington's guilt, the district court decided the dates on which Washington committed the crime. Specifically, the district court found that Washington's crime "took place during a period approximately June 9, 2013 through ... August 4th of 2015." The question on which Washington contends that he was entitled to a jury trial-the date of his offense-was already determined by the district court in its verdict. Blakely therefore does not require a jury trial on this question. See Cunningham v. California , 549 U.S. 270, 290, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007) (citing Blakely , 542 U.S. at 305, 124 S.Ct. 2531, and explaining that the Sixth Amendment is not satisfied when a judge imposes a sentence based on additional facts not established by the fact finder in the verdict).
In urging us to reach the opposite conclusion, Washington relies on State v. DeRosier , 719 N.W.2d 900 (Minn. 2006). In DeRosier , a jury found the defendant guilty of first-degree criminal sexual conduct. Id. at 901. The jury was not asked to determine the specific date of the offense. Id. Rather, the district court instructed the jury that in order for it to find the defendant guilty, the jury had to find "that [the defendant's] act took place on or about June, July, or August 2000." Id. at 902. The defendant challenged his sentence on appeal, noting that the presumptive sentence for the crime if committed in June or July would have been lower than if the crime was committed in August. Id. The defendant objected to the district court's making a finding as part of sentencing that at least one of the defendant's criminal acts occurred in August. Id. at 903. Because the district court imposed the higher presumptive sentence-the sentence applicable to crimes committed in August-the defendant argued that his right to a jury trial under Blakely was violated. Id. We agreed.
Our conclusion in DeRosier that Blakely applied and was violated, however, depended on the fact that the district court there had to make findings in addition to the jury's verdict to support the sentence. Id. (noting that "the district court independently decided that at least one of DeRosier's sexual offenses occurred after August 1"). That additional step did not happen here. The verdict of guilt contained the date of Washington's offense; additional fact-finding beyond the verdict was neither done nor necessary here. Accordingly, we hold that the district court did not violate Washington's Sixth Amendment right to a jury trial under Blakely .
CONCLUSION
For the foregoing reasons, we affirm the court of appeals.
Affirmed.

Before he committed the offense at issue here, Washington was convicted of violating the predatory-offender-registration statute on four separate occasions. After each conviction, the 10-year registration period restarted and was extended by 5 years, as required under Minn. Stat. § 243.166, subd. 6(b), resulting in a registration period lasting until the year 2043.

The parties do not dispute the date of expiration or decay.

It is theoretically possible for a failure to register under Minn. Stat. § 243.166 to not be a continuing offense. For example, if an offender fails to register, but then cures this failure the next day, the offense would not be "continuing" in the manner that it is here. But because that scenario is not what happened here, we express no opinion on whether those circumstances might change the outcome.

The Supreme Court has addressed whether a failure-to-register offense is "continuing." See Toussie v. United States , 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970). The defendant in Toussie did not register for the draft in 1959, as required after he turned 18, or any time thereafter. Id. at 113, 90 S.Ct. 858. He was indicted in 1967 for failure to register, and he moved to dismiss the indictment, asserting that prosecution was barred by the five-year statute of limitations. Id. at 113-14, 90 S.Ct. 858. The district court denied the motion, concluding that the statute of limitations had not expired and the defendant could still be prosecuted, because he continued to commit the crime every day he did not register. Id. at 114, 90 S.Ct. 858. The Supreme Court reversed. Id. at 124, 90 S.Ct. 858. An offense should not be viewed as continuing, the Court stated, unless "the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." Id. at 115, 90 S.Ct. 858. Because the legislative history of the draft legislation showed no such congressional intent, the Court concluded that failure to register for the draft was not a continuing offense. Id. at 116-17, 90 S.Ct. 858. Unlike the predatory-offender-registration statute however, the statute at issue in Toussie required men to register only once for the draft, at the age of 18, and imposed no continuing obligations. Id. at 117-19, 90 S.Ct. 858. Accordingly, our conclusion that violation of the predatory-offender-registration statute is a continuing offense is not inconsistent with the result in Toussie .

As charged here, that would mean that Washington would have committed 787 separate felonies.