**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1215**

State of Minnesota,
Respondent,

vs.

Rickford Rehmann Munger,
Appellant.

**Filed January 12, 2015
Affirmed
Halbrooks, Judge**

Olmsted County District Court
File No. 55-CR-10-5482

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Richard Schmitz, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Reyes, Judge; and Crippen, Judge.[*]

## S Y L L A B U S

Under the plain language of Minn. Stat. § 243.166, subd. 4a(b), persons required to register as predatory offenders are not required to provide written notification of changes in employment.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**O P I N I O N**

**HALBROOKS**, Judge

Appellant challenges his convictions of three counts of failing to register as a predatory offender, arguing that (1) his conviction for count two must be reversed because the evidence is insufficient to prove that he failed to inform his agent about his change in employment, (2) his counsel was ineffective because he failed to obtain and introduce into evidence a supervised-release violation report stating that appellant had been terminated from his employment, (3) he was acquitted of the kidnapping and false-imprisonment counts so he should not have been required to register in the first place, and (4) the requirement to register violates his substantive due-process rights. We affirm.

**FACTS**

In 1997, appellant Rickford Rehmann Munger was charged with two counts of kidnapping, one count of false imprisonment, and one count of second-degree assault. In 1998, a jury convicted Munger of second-degree assault but acquitted him of the kidnapping and false-imprisonment charges. After serving the second-degree assault sentence, Munger completed a predatory-offender notification-and-registration form on June 3, 2004, acknowledging that he was required to register as a predatory offender for a period of ten years. Munger's registration requirements included providing written notice of all changes to his primary address at least five days prior to moving, providing notice of any changes in employment, and completing an annual verification form.

On May 10, 2009, Munger completed a change-of-information form listing his employer. On September 15, 2009, Munger completed a change-of-information form

listing his address on 9th Avenue in Rochester. On June 3, 2010, when an investigator with the Rochester Police Department went to the 9th Avenue address to attempt to verify Munger's residence, a new tenant told the investigator that Munger had moved out in February 2010. The landlord told the investigator that Munger had moved to Colorado in January or February 2010. The investigator then contacted Munger's listed employer, who stated that Munger no longer worked there. The employer told the investigator that Munger had moved to Grand Junction, Colorado, in February 2010. On June 8, 2010, the Bureau of Criminal Apprehension (BCA) sent an annual verification form to an alternative address for Munger in Colorado.

On July 21, 2010, police arrested Munger in Minnesota because he was peeping into windows of an apartment building. Investigation into those charges revealed that Munger flew from Denver, Colorado, to Minneapolis on June 16, 2010. The investigation also revealed that the June 8 verification form was in Munger's car. The state charged Munger with three counts of violating the predatory-offender-registration statute. Count one alleged that Munger failed to provide written notice five days before moving to a new primary address. Count two alleged that Munger failed to inform his agent or a law-enforcement authority that he was no longer employed by his listed employer. Count three alleged that Munger failed to return the verification form sent to him in Colorado.

At the time that Munger was convicted of second-degree assault in 1998, the predatory-offender registration statute enumerated kidnapping and false imprisonment as charges requiring registration only if a minor was involved. The legislature amended the

statute in 1999 to expand the enumerated kidnapping offenses to include adult victims. Because the registration statute did not list kidnapping of adults as a charge requiring registration at the time that he was convicted of second-degree assault, Munger moved the district court to dismiss the failure-to-register charges, arguing that he was not a "person required to register" under Minnesota law. The district court found that the legislature intended retroactive application of amendments to the registration statute and found that the law as it existed when Munger was released from prison governed his requirement to register. Because Munger was released from confinement on the second-degree-assault conviction in 2004, the district court denied the motion to dismiss.

After a court trial, the district court found Munger guilty of all three counts of failing to register as a predatory offender in violation of Minn. Stat. § 243.166 (2008 & Supp. 2009).[1] On counts one and three, the district court sentenced Munger to concurrent 36-month sentences, with credit for 67 days served; and on count two, the district court sentenced Munger to a consecutive one-year-and-one-day sentence in prison.

Munger filed a notice of appeal, but subsequently moved to stay the appeal and to remand for postconviction proceedings. Munger petitioned the district court for postconviction relief, arguing that (1) he received ineffective assistance of counsel, (2) he

---

[1] The 2009 supplemental version of the statute was in effect at the time Munger failed to register between February and July 2010, and, in reviewing a failure-to-register conviction, we use the statute in effect at the time of the offense. *State v. Manning*, 532 N.W.2d 244, 246-47 (Minn. App. 1995) (applying the 1993 version of the registration statute, when the defendant was convicted of criminal sexual conduct in 1988, began registering in July 1992, and failed to register in January 1994), *review denied* (Minn. July 20, 1995). The legislature has amended the statute since 2009, but those amendments have not changed the statutory language relevant to this appeal.

4

should not have been required to register as a predatory offender for a conviction arising out of the same set of circumstances of kidnapping and false-imprisonment charges of which he was acquitted, and (3) his substantive due-process right to interstate travel was violated when he was required to register as a predatory offender. The district court found that Munger failed to allege competent factual allegations that would entitle him to the requested relief and denied Munger's postconviction petition for relief in its entirety. Munger then moved to reinstate his appeal to this court, and we granted his motion.

## ISSUES

I.    Did Munger violate the predatory-offender registration requirements by not providing written notice of his change in employment?

    A.    Does Minnesota law require written notice of changes in employment?

    B.    Was the evidence sufficient to prove that Munger failed to give notice of changes in employment?

II.    Did Munger receive ineffective assistance of counsel because his counsel did not introduce the July 2009 supervised-release violation report into evidence?

III.    Is Munger a person required to register as a predatory offender given that he was acquitted of the kidnapping and false-imprisonment charges?

IV.    Does the requirement to register as a predatory offender violate Munger's fundamental right to interstate travel?

V.    Should we address Munger's additional arguments in his pro se supplemental brief when they were not raised to the district court?

## ANALYSIS

## I.

Munger argues that the district court erred in finding him guilty of count two because he did not fail to provide notice of a change in employment. Munger argues that

5

he orally notified his agent of his change in employment. First, we interpret the registration statute to determine whether it requires written notification of changes in employment. Then we consider whether the evidence was sufficient to prove that Munger failed to inform his agent of his change in employment.

## A.    Statutory Interpretation

Statutory interpretation is a question of law, which we review de novo. *Boutin v. LaFleur*, 591 N.W.2d 711, 714 (Minn. 1999). "The primary objective in the interpretation of a statute is to ascertain and effectuate the intention of the legislature." *State v. Wukawitz*, 662 N.W.2d 517, 525 (Minn. 2003). If the language of the statute is plain and unambiguous, we do "not engage in any further construction" and we look to the plain meaning of the statute. *Id.*

The statute governing registration of predatory offenders requires registration for all persons who are charged with an enumerated offense and convicted of that offense or another offense arising out of the same set of circumstances. Minn. Stat. § 243.166, subd. 1b(a). The statute requires the person to register with their corrections agent or law-enforcement authority by submitting a signed, written statement containing the information required by the BCA. *Id.*, subd. 4(a). The required information includes:

> (1) the person's primary address;
> (2) all of the person's secondary addresses in Minnesota, including all addresses used for residential or recreational purposes;
> (3) the addresses of all Minnesota property owned, leased, or rented by the person;
> (4) the addresses of all locations where the person is employed;

6

(5) the addresses of all schools where the person is enrolled; and

(6) the year, model, make, license plate number, and color of all motor vehicles owned or regularly driven by the person.

*Id.*, subd. 4a(a). For changes to a person's primary address, the statute requires "written notice of the new primary address." *Id.*, subd. 3(b). For all other changes in circumstances that make reported information invalid, the statute requires the person to "immediately inform the agent or authority that the information is no longer valid." *Id.*, subd. 4a(b).

Munger argues that the plain language of the statute does not require him to provide written notice of changes in employment because the statute only requires that he "immediately inform" the agent or agency of any changes to his employment. *See id.* The state argues that the plain language of the statute requires written notice of a change in employment because a different subdivision of the statute states that registration must consist of a "statement in writing signed by the person" listing the information required by the BCA. *See id.*, subd. 4(a). The district court found that the statute requires written notice of changes in employment.

Reading the multiple parts of the statute together, the plain language demonstrates that the legislature has deliberately and explicitly required a written statement for the initial registration under subdivision 4(a) and for new primary addresses under subdivision 3(b). But the legislature has not expressly required written notice of changes in circumstances that invalidate reported information under subdivision 4a(b). The

7

different language in the separate subdivisions of the statute demonstrates that changes in circumstances, such as changes in employment, do not need to be in writing.

The primary purpose of the predatory-offender registration statute is "to create a sexual-offender registry to assist law enforcement with investigations." *State v. Ulrich*, 829 N.W.2d 429, 430 (Minn. App. 2013). The clearest way to effectuate this purpose may be to require offenders to provide all information in writing. But the legislature did not explicitly require notices of changes in employment to be in writing, and "[w]hen the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn. Stat. § 645.16 (2014). In addition, the goal of subdivision 4a(b) is immediate communication to the agent or law-enforcement authority that the reported information is no longer valid, and communication can occur more immediately through oral notification than written notification.

We therefore conclude that the predatory-offender-registration statute does not require written notice of changes in employment under Minn. Stat. § 243.166, subd. 4a(b). The district court erred in its statutory interpretation when it found that the statute requires written notice of changes in employment.

## B. Sufficiency of the Evidence

When reviewing a claim of insufficient evidence, we "view the evidence in the light most favorable to the verdict and assume that the fact finder believed the state's witnesses and disbelieved any contrary evidence" and determine whether the fact-finder

8

could have reasonably found the appellant guilty beyond a reasonable doubt. *Gulbertson v. State*, 843 N.W.2d 240, 244-45 (Minn. 2014) (quotation omitted).

The elements of Munger's failure-to-register offenses are that (1) Munger is a person required to register as a predatory offender, (2) Munger knowingly violated any of the requirements to register, (3) the time period during which Munger was required to register had not elapsed, and (4) Munger's acts took place on or about February 1, 2010, through July 21, 2010, in Olmsted County. The state was required to prove that Munger violated "any" of the requirements to register, including the requirement to provide immediate notice to the corrections agent or law-enforcement authority that Munger no longer was employed at a previously listed place of employment. Minn. Stat. § 243.166, subd. 4a(a)-(b).

In its findings of fact following the court trial, the district court found that Munger "was informed by his probation officer that she was not sure when he would be able to return to work due to concern about his access to computers and lack of supervision." We review the district court's factual findings for clear error. *Chosa ex rel. Chosa v. Tagliente*, 693 N.W.2d 487, 489 (Minn. App. 2005).

At trial, Munger testified that his corrections agent came to visit him in jail and told him that he had been terminated from his job. Munger testified that he did not submit a change-of-information form when his employment was terminated because his agent was aware of it. But, at trial, a unit supervisor in the Dodge, Fillmore, and Olmsted County Community Corrections Department testified that Munger's agent informed Munger that the employer needed to implement controls to prevent his access to

9

pornography, not that he was fired. The following exchange took place between the prosecutor and the unit supervisor:

> Q. Does anywhere in those chronos indicate . . . that [Munger] was terminated from [his] employment . . . ?
> A. No.
> Q. Was there any indication in the chronos anywhere that [Munger] was terminated from [his] employment . . . ?
> A. No.
> Q. Is there any indication in there that [his agent] or any other agent ever told [Munger] that he was no longer allowed to go back to [his employment]?
> A. No.
> Q. In fact, there was just concerns [sic] that some supervision or something needed to be in place to prevent him from access to pornography?
> A. Yes.

The unit supervisor testified that Munger's agent "indicated she wasn't sure when [Munger] would be able to return to work." Munger's testimony is the only evidence supporting his contention that his agent was the one to inform him that his employment had been terminated.

The district court, acting as the fact-finder, may properly weigh the evidence and assess the credibility of witnesses. *State v. Engle*, 731 N.W.2d 852, 859-60 (Minn. App. 2007). Based on the evidence presented at trial, the district court found that Munger "was informed by his probation officer that she was not sure when he would be able to return to work." The district court found Munger guilty of failing to register by not informing his agent that a previously listed place of employment was no longer valid. Viewing the evidence in the light most favorable to the district court's finding of guilt,

10

we conclude that there was sufficient evidence to find Munger guilty of failing to inform his agent of a change to his employment.

## II.

Munger argues that he received ineffective assistance of counsel because his counsel did not introduce into evidence a supervised-release violation report from July 2009. Ineffective-assistance-of-counsel claims involve mixed questions of law and fact, which we review de novo. *Carney v. State*, 692 N.W.2d 888, 890-91 (Minn. 2005). The Sixth Amendment guarantees criminal defendants the right to counsel. U.S. Const. amend. VI. The right to counsel includes the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063 (1984). To prevail under *Strickland*, appellants "must demonstrate that counsel's performance fell below an objective standard of reasonableness, and that a reasonable probability exists that the outcome would have been different but for counsel's errors." *Dereje v. State*, 837 N.W.2d 714, 721 (Minn. 2013) (quotation omitted). An attorney meets the objective standard of reasonableness by "exercising the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances." *State v. Hokanson*, 821 N.W.2d 340, 358 (Minn. 2012) (quotation omitted), *cert. denied*, 133 S. Ct. 1741 (2013). We apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *see also Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 788 (2011) ("Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and

with the judge."). We generally will not review an ineffective-assistance-of-counsel claim based on trial strategy, which includes decisions such as what evidence to present and what witnesses to call at trial. *State v. Bobo*, 770 N.W.2d 129, 138 (Minn. 2009).

The supervised-release violation report states that Munger's agent spoke with Munger's listed employer and learned that Munger "is now terminated from his employment due to his behavior and will not be allowed to return as an employee." Munger argues that the report was easily accessible and included exculpatory information that established that he was not guilty of count two because it proves that his agent was informed of his change in employment. Munger contends that his attorney's failure to introduce this report falls below the objective standard for reasonableness and prejudiced his defense at trial.

We disagree. The report states that Munger exhibits "risky sex offender behavior." The report includes statements that Munger "is not amenable to sex offender treatment"; Munger's "risk [to] community safety remains very high"; "[h]is criminal behavior has been negatively impacting Rochester, MN for 3 decades"; and his "most recent violations indicate he has a strong preoccupation with pornography which given the serious boundary violations the subject has committed in the past cause agents to believe his risk to public safety is increased." In addition, Munger's counsel elicited Munger's testimony at trial that Munger's agent was informed of his change in employment. Munger's attorney likely determined, consistent with the exercise of customary skill and diligence, that the supervised-release violation report was at best

duplicative of that testimony, and at worst highly prejudicial. We conclude that Munger has not shown that he received ineffective assistance of counsel.

### III.

Munger argues that he is not "a person required to register" as a predatory offender because he was acquitted of the predatory offenses. Munger asks us to reconsider established caselaw and conclude that acquitted charges cannot support a probable-cause finding for purposes of the predatory-offender statute. In his argument to use a somewhat heightened probable-cause standard, Munger essentially equates the probable-cause standard with the highest burden of proof, beyond a reasonable doubt. We review interpretation of statutes de novo. *Boutin*, 591 N.W.2d at 714.

In *State v. Lopez*, the Minnesota Supreme Court stated that an offender does not need to be convicted of a predatory offense in order to trigger the registration requirements, but the predatory offense must be supported by probable cause. 778 N.W.2d 700, 705 (Minn. 2010). In *State v. Haukos*, this court affirmed the use of acquitted charges in requiring an offender to register and clarified that "it is the judiciary's determination of probable cause, not the prosecutor's bringing of a charge, that triggers the statutory basis for sex-offender registration." 847 N.W.2d 270, 273 (Minn. App. 2014). Because *Haukos* is consistent with *Lopez* and with the language in the statute, we decline to reconsider the holding in *Haukos*.

Munger also argues that policy reasons dictate that he should not be required to register because he was acquitted of the predatory offenses. But the statute clearly states that offenders must register if they have been charged with a predatory offense and

13

convicted of any offense arising out of the same set of circumstances. *See* Minn. Stat. § 243.166, subd. 1b(a); *Lopez*, 778 N.W.2d at 705 (recognizing that the combination of a "threshold factual showing of probable cause" and a "conviction for another offense 'arising out of the same set of circumstances' limits the number of defendants who might be forced to register").

> [W]e are not insensitive to the very basic question appellant raises—why should one be required to register as a predatory offender based upon a conviction arising out of the same set of circumstances as a charged predatory offense when that predatory offense charge is supported . . . only by that lowest of thresholds, probable cause? Separation of powers dictates that this question be addressed to the legislative branch of government, however.

*Haukos*, 847 N.W.2d at 704 n.3 (citations omitted).

Here, Munger was charged with the predatory offenses of kidnapping and false imprisonment. Munger was acquitted of the kidnapping and false-imprisonment charges at trial, but Munger was convicted of second-degree assault, which arose out of the same set of circumstances as the charged predatory offenses. We conclude that Munger is a person required to register as a predatory offender.

**IV.**

Munger contends that the requirement to register as a predatory offender violates his fundamental right to interstate travel. We review challenges to the constitutionality of a statute de novo. *State v. Shattuck*, 704 N.W.2d 131, 135 (Minn. 2005). We exercise our power to declare a statute unconstitutional "with extreme caution and only when absolutely necessary." *In re Haggerty*, 448 N.W.2d 363, 364 (Minn. 1989). Munger

14

bears the burden of proving beyond a reasonable doubt that the statute violates a constitutional provision. *State v. Johnson*, 813 N.W.2d 1, 11 (Minn. 2012).

The right to interstate travel is a well-established fundamental right recognized by the United States Constitution. *Schatz v. Interfaith Care Ctr.*, 811 N.W.2d 643, 654 (Minn. 2012). A statute burdens the right to interstate travel if it affects (1) the right of a citizen of one state to enter and to leave another state, (2) the right of a citizen of one state to be treated as a welcome visitor in other states, rather than an unfriendly alien, or (3) the right of a person seeking to establish residence in a new state to be treated like other citizens of that state. *Id.* The Minnesota Supreme Court has stated that "the registration statute does not restrict [an offender's] ability to change residences at will or even to move out of state." *Boutin*, 591 N.W.2d at 717. The registration statute only imposes the requirement that the offender give written notice of his new primary address to the designated registration agencies. Minn. Stat. § 243.166, subd. 3(b).

Munger's counsel stated at trial, "There's nothing in the registration statute that prohibits an offender from traveling about the United States at his will, freely and voluntarily." And a BCA agent testified, "You can go out of state and be somewhere and you technically do not have to tell us as long as you're just going away for a period of time and coming back here." Munger does not argue that the statute burdens his right to enter and leave another state or his right to be treated as a welcomed visitor in other states. And the Minnesota Supreme Court has stated that the registration statute does not burden the right of people seeking to live in a new state to be treated like other citizens of that state. *See Boutin*, 591 N.W.2d at 717 ("[R]egistration does not require an affirmative

15

disability or restraint, it only requires that the person register with law enforcement and inform the state of any change of address.").

Munger has not demonstrated that the registration statute infringes on his fundamental right to interstate travel. If a statute does not implicate a fundamental right, it need only "provide a reasonable means to a permissible objective." *Id.* at 716. The legislature enacted the registration statute "to create an offender registry to assist law enforcement with investigations." *Id.* at 717. We conclude that requiring offenders to provide written notice of new primary addresses is a reasonable means to achieve this permissible objective.

## V.

Munger submitted a pro se supplemental brief, arguing that application of the registration statute violated his procedural due-process rights and that the 1999 amendment to the registration statute does not apply to him. Munger did not raise these issues to the district court. We decline to address these issues not argued to and considered by the district court. *See Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996) ("This court generally will not decide issues which were not raised before the district court, including constitutional questions of criminal procedure.").

## D E C I S I O N

The predatory-offender registration statute does not require written notice of changes in employment under Minn. Stat. § 243.166, subd. 4a(b). But we affirm Munger's convictions because (1) there is sufficient evidence to find Munger guilty of failing to inform his agent of his change in employment, (2) he did not receive ineffective

16

assistance of counsel, (3) he is a person required to register, and (4) the registration statute does not violate his fundamental right to interstate travel.

**Affirmed.**