# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A25-0785

State of Minnesota,
Respondent,

vs.

Terry Izeal Heggs,
Appellant.

**Filed May 26, 2026**
**Reversed**
**Johnson, Judge**

Mower County District Court
File No. 50-CR-22-2267

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kristen Nelsen, Mower County Attorney, Heather Kjos Schmit, Assistant County Attorney, Austin, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Kathryn J. Lockwood, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larson, Presiding Judge; Johnson, Judge; and Kirk, Judge.[*]

## SYLLABUS

The state did not prove beyond a reasonable doubt that appellant knowingly failed to register as a predatory offender by providing an address that was both his workplace

---

[*]Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

address and his secondary address without specifying that the address was his secondary address.

## OPINION

**JOHNSON**, Judge

A Mower County jury found Terry Izeal Heggs guilty of failing to register as a predatory offender. The state's theory at trial was that Heggs violated the statute by not specifying that his workplace address, where he regularly or occasionally stayed overnight, also was his secondary address. We conclude that the state did not prove beyond a reasonable doubt that Heggs knowingly violated the predatory-offender-registration statute. Therefore, we reverse the conviction.

## FACTS

On November 19, 2022, at approximately 8:00 a.m., police officers were dispatched to a restaurant in the city of Austin to investigate a 911 hang-up call. When officers arrived and entered the restaurant, they found Heggs, who worked at the restaurant, and a woman with whom he had been in an intimate relationship. The officers spoke with the woman and arrested Heggs.

While inside the restaurant, officers saw a room that was furnished with a mattress, a cushioned chair, and a television. Officers also noticed men's clothing in the room, which led one officer to believe that Heggs was staying overnight in the room. In a warranted search of the premises two days later, a detective found men's personal-care products, a full-size bath towel hanging in an adjacent half-bathroom, and a suitcase that contained documents bearing Heggs's name.

2

The state charged Heggs with four offenses: (1) failure to register as a predatory offender, in violation of Minn. Stat. § 243.166, subd. 5(a)(1) (2022); (2) violation of a domestic-abuse-no-contact order, in violation of Minn. Stat. § 629.75 subd. 2(c) (2022); (3) domestic assault, in violation of Minn. Stat. § 609.2242, subd. 2, (2022); and (4) interference with an emergency call, in violation of Minn. Stat. § 609.78, subd. 2(1) (2022).

The case was tried to a jury on three days in April 2023. The state called six witnesses and introduced 32 exhibits. Among the state's witnesses was a special agent employed by the state bureau of criminal apprehension (BCA) who was responsible for monitoring predatory-offender registrations. She testified generally about the predatory-offender-registration system and the BCA's record-keeping, stated that she had never met Heggs, and stated that she had reviewed the BCA's file on Heggs.

During the special agent's testimony, the state introduced exhibit 21, a five-page "Change of Information" form bearing a BCA logo. Heggs used the form to change his registered primary address approximately one month before his arrest. The form consists of 15 parts with various headings. Under the heading "Current Primary Address," Heggs handwrote his new primary address. Under the heading "Current Employment Information," Heggs handwrote the address of the restaurant where he worked. The part of the form with the heading "Current Secondary and Other Addresses" was left blank.

Similarly, the state introduced exhibit 23, a five-page "Address Verification Form," which Heggs signed approximately three weeks before his arrest. Most of the information in exhibit 23 is typed, including the address of Heggs's primary residence and his

workplace address. The part of the address-verification form with the heading "New Secondary Address" was left blank. Heggs also initialed 27 paragraphs that recite the duties of a person required to register as a predatory offender, as directed by the form.

Heggs did not testify. After the state rested, Heggs moved for a judgment of acquittal. The district court granted the motion with respect to counts 2 and 4. Counts 1 and 3 were submitted to the jury. In the prosecutor's closing argument, she stated, with respect to the failure-to-register charge in count 1, that the evidence showed that when Heggs was arrested at his workplace, he had been staying overnight there for five or more days but had not registered the workplace address as a secondary address. The jury found Heggs guilty of the charges in counts 1 and 3.

Heggs filed a post-trial motion for judgment of acquittal. The district court granted the motion and acquitted Heggs of the charges in counts 1 and 3. With respect to the failure-to-register charge in count 1, the district court concluded that "the circumstantial evidence is simply insufficient to prove beyond a reasonable doubt that Defendant occasionally stayed overnight at" the restaurant. The state appealed. This court reasoned, with respect to the failure-to-register charge in count 1, that "[g]iven the nature and volume of personal property in the break room, the only reasonable inference is that a man was regularly staying overnight in that room, had been doing so for some time, and planned to continue doing so." *State v. Heggs*, A23-1254, 2024 WL 3493817, at *3 (Minn. App. July 22, 2024), *rev. denied* (Minn. Nov. 19, 2024). We further reasoned that "the only reasonable inference is that Heggs was the man staying there regularly." *Id.* Accordingly, we concluded that the state's evidence was sufficient to support Heggs's conviction of

4

failure to register for the reasons stated by the district court. *Id*. But we concluded that the evidence was insufficient to support Heggs's conviction of the domestic-assault charge in count 3. *Id*. Accordingly, we affirmed in part, reversed in part, and remanded for entry of judgment and sentencing on the failure-to-register charge. *Id*. at *3-4. On remand, the district court imposed a sentence of 36 months of imprisonment.

Heggs appeals. He makes four arguments for reversal of his failure-to-register conviction, all of which are presented in the alternative. First, Heggs argues that the state did not prove that he regularly or occasionally stayed overnight at his workplace address, as necessary to establish that his workplace address was his secondary address. Second, he argues that, even if the state proved that he regularly or occasionally stayed overnight at his workplace address, the state did not prove that he began doing so five or more days before his arrest. Third, he argues that the state did not prove that he violated the predatory-offender-registration statute by providing an address that was both his workplace address and his secondary address without specifying that the address was his secondary address. And fourth, he argues that the state did not prove that he *knowingly* violated the predatory-offender-registration statute. We need consider only the third and fourth arguments, which are inter-related and are dispositive of the appeal.[1]

---

[1]We nonetheless note that, if we were to consider Heggs's first argument, we would conclude that the argument is barred by the law-of-the-case doctrine because the issue was conclusively determined in the prior appeal. *See Heggs*, 2024 WL 3493817, at *3; *see also Smith v. State*, 974 N.W.2d 576, 582 (Minn. 2022); *Lynch v. State*, 749 N.W.2d 318, 321 (Minn. 2008).

**ISSUE**

Did the state prove beyond a reasonable doubt that Heggs knowingly failed to register as a predatory offender by providing an address that was both his workplace address and his secondary address without specifying that the address was his secondary address?

**ANALYSIS**

To determine whether evidence is sufficient to support a conviction, this court undertakes "a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient." *State v. Jones*, 977 N.W.2d 177, 187 (Minn. 2022) (quotation omitted). We "carefully examine the record to determine whether the facts and the legitimate inferences drawn from them would permit the factfinder to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted." *State v. Waiters*, 929 N.W.2d 895, 900 (Minn. 2019) (quotation omitted). "We assume that the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Friese*, 959 N.W.2d 205, 214 (Minn. 2021) (quotation omitted).

The above-described standard of review applies so long as a conviction is adequately supported by direct evidence. *State v. Horst*, 880 N.W.2d 24, 39 (Minn. 2016). If a conviction is based on circumstantial evidence, we apply a heightened standard of review with a two-step analysis. *State v. Firkus*, 31 N.W.3d 468, 478 (Minn. 2026); *State v. Moore*, 846 N.W.2d 83, 88 (Minn. 2014). At the first step of the circumstantial-evidence analysis, we "identify the 'circumstances proved.'" *State v. Isaac*, 9 N.W.3d 812, 815

6

(Minn. 2024) (quoting *State v. McInnis*, 962 N.W.2d 874, 890 (Minn. 2021)). "The first step requires us to 'winnow down the evidence presented at trial by resolving all questions of fact in favor of the jury's verdict,' which results in 'a subset of facts that constitute the circumstances proved.'" *Firkus*, 31 N.W.3d at 478 (quoting *State v. Harris*, 895 N.W.2d 592, 600 (Minn. 2017)).

At the second step of the analysis, we "consider whether the reasonable inferences that can be drawn from the circumstances proved, when viewed as a whole and not as discrete, isolated facts, are consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis other than guilt." *Firkus*, 31 N.W.3d at 478 (quotations omitted). At the second step, we independently examine the reasonableness of the inferences drawn from the circumstances proved. *See id.* at 483. We do not give deference to the jury's verdict at this step. *Loving v. State*, 891 N.W.2d 638, 643 (Minn. 2017).

## A.

A person who has been convicted of certain crimes is required to register as a predatory offender. Minn. Stat. § 243.166, subd. 1b(a)(1) (2022). A person required to register as a predatory offender shall register with the assigned corrections agent or, if there is no such agent, with the local law-enforcement authority. *Id.*, subd. 3(a). The registration "must consist of a statement in writing signed by the person, giving information required by the bureau," as well as fingerprints, a DNA sample, and a photograph. *Id.*, subd. 4(a).

The information that must be included in a predatory-offender registration is described in the statute:

7

A person required to register under this section shall provide to the corrections agent or law enforcement authority the following information:

> (1)    the person's primary address;[2]
>
> (2)    all of the person's secondary addresses[3] in Minnesota, including all addresses used for residential or recreational purposes;
>
> (3)    the addresses of all Minnesota property owned, leased, or rented by the person;
>
> (4)    the addresses of all locations where the person is employed;
>
> (5)    the addresses of all schools where the person is enrolled;
>
> (6)    the year, model, make, license plate number, and color of all motor vehicles owned or regularly driven by the person;
>
> (7)    the expiration year for the motor vehicle license plate tabs of all motor vehicles owned by the person; and
>
> (8)    all telephone numbers including work, school, and home and any cellular telephone service.

*Id.*, subd. 4a(a).

A person required to register as a predatory offender must update a previous registration if there is a change in circumstances that makes the previously provided

---

[2]The term "primary address" is defined by the statute to mean "the mailing address" or "the physical location" of "the person's dwelling." Minn. Stat. § 243.166, subd. 1a(h).

[3]The term "secondary address" is defined by the statute to mean "the mailing address" or "the physical location" of "any place where the person regularly or occasionally stays overnight when not staying at the person's primary address." Minn. Stat. § 243.166, subd. 1a(j).

information no longer valid. *Id.*, subd. 4a(b). A person who knows or reasonably should know that he or she has a duty to register is guilty of a felony if the person "knowingly commits an act or fails to fulfill a requirement that violates any provision of" section 243.166. *Id.*, subd. 5(a)(1).

**B.**

For his third argument, Heggs argues that the state's evidence is insufficient as a matter of law to prove that he failed to register a secondary address. He notes the undisputed evidence that he "provided the . . . address to law enforcement when he updated his registration information in October 2022." He asserts that he "complied with the registration statute's requirement that he provide the address to law enforcement." He contends that the registration statute does not require a predatory offender to provide the required information in any particular format or manner and, thus, did not require him to provide his workplace address twice and to specify that it was both his workplace address and his secondary address. For his fourth argument, Heggs argues that the state did not prove that he knowingly violated the predatory-offender-registration statute.

The relevant subdivision of the statute states, "A person required to register under this section *shall provide . . . the following information*: . . . ." Minn. Stat. § 243.166, subd. 4a(a) (emphasis added). That subdivision then lists eight categories of information that must be provided. *Id.* Heggs is correct that the relevant subdivision does not expressly require a predatory offender to present the required information in any particular format or manner. *See id.* In addition, subdivision 4a(a) does not expressly require a predatory

9

offender to specify the statutory category or categories that apply to the information provided. *See id.*

The state argues, "It is clear that Appellant [must] list both a secondary address and a work address separately, even if they are the same address." The state does not cite any statutory provision or caselaw in support of that assertion. Contrary to the state's position, subdivision 4a does not expressly require a predatory offender to provide an address "separately" or multiple times within the same registration if the address is responsive to multiple paragraphs of section 243.166, subdivision 4a(a). The state also contends that "[t]he registration forms are clear in that each required piece of information is listed on the form separately." But the registration forms do not determine Heggs's obligations under the predatory-offender-registration statute; he may be convicted of a crime only if he violates a requirement imposed by the statute. The state's arguments appear to be a request that this court impose additional obligations that are not found in the plain language of the statute. The supreme court repeatedly has stated that an appellate court may not "add words or phrases not supplied by the Legislature to an unambiguous statute." *Underwood v. State*, 25 N.W.3d 26, 36 (Minn. 2025); *see also In re Commitment of Benson*, 12 N.W.3d 711, 716 (Minn. 2024); *State v. Schwartz*, 957 N.W.2d 414, 419 (Minn. 2021).

In *State v. Munger*, 858 N.W.2d 814 (Minn. App. 2015), *rev. denied* (Minn. Mar. 25, 2015), the appellant was convicted of failing to register based on evidence that he did not give *written* notice to his corrections agent of a change in his employment. *Id.* at 817-18. On appeal, the appellant argued that he complied with the registration statute by giving *oral* notice of his change in employment. *Id.* at 819. We agreed, noting that, although the

registration statute requires a written notice for initial registrations and new primary addresses, it requires merely that predatory offenders "immediately inform" the assigned corrections agent or the local law-enforcement authority of other changes in circumstances. *Id.* at 819-20. We reasoned that "the legislature has not expressly required written notice of changes in circumstances that invalidate reported information under subdivision 4a(b)" and that the absence of such statutory language "demonstrates that changes in circumstances, such as changes in employment, do not need to be in writing." *Id.* at 820. The present case is similar to *Munger* inasmuch as the legislature required predatory offenders to provide information that is responsive to the eight categories of information described in section 243.166, subdivision 4a(a), but did not expressly require a predatory offender to specify the applicable statutory category or categories if information is responsive to multiple paragraphs of section 243.166, subdivision 4a(a).

Given the evidence presented at trial and this court's prior opinion, the state proved that Heggs's workplace address also was his secondary address. *See Heggs*, 2024 WL 3493817, at *3. Accordingly, Heggs was required by both the second and fourth paragraphs of section 243.166, subdivision 4a(a), to provide that address. Exhibit 21 shows that, when Heggs signed a change-of-information form on October 17, 2022, he provided the address, albeit not under the heading "Current Secondary and Other Addresses." Exhibit 23 shows that, when Heggs signed an address-verification form on October 31, 2022, he provided the address, albeit not under the heading "New Secondary Address."

We need not decide whether Heggs complied with or violated the statutory requirement that he register a secondary address because, for the reasons stated below, we

11

conclude that the state did not prove that he *knowingly* violated the statute. The statute provides that a person who knows or reasonably should know of the person's duty to register is guilty of a felony if the person "*knowingly* commits an act or fails to fulfill a requirement that violates any provision of" the statute. Minn. Stat. § 243.166, subd. 5(a)(1) (emphasis added). "The plain text of the statute suggests that the defendant must know that he is violating the statute when the violation occurs." *State v. Mikulak*, 903 N.W.2d 600, 603 (Minn. 2017). A defendant's "knowledge of the law at the time of the violation is an element of the offense," *id.* at 604, and a defendant's "mistake of law is a defense because it negates the existence of the required mental state," *id.* at 603. In analyzing whether Heggs knowingly violated the statute, we assume without deciding that—as the state argues—the statute required him to specify that his workplace address also was his secondary address and that he failed to properly provide his secondary address by completing the change-of-information and address-verification forms without specifying that his workplace address also was his secondary address, such as by writing that address multiple times in multiple parts of the forms.

If knowledge of the law is an element of a criminal offense, a defendant's knowledge typically is proved with circumstantial evidence. *See State v. Lehman*, 3 N.W.3d 875, 878-80 (Minn. 2024); *see also State v. Alarcon*, 932 N.W.2d 641, 647-50 (Minn. 2019) (analyzing circumstantial evidence in failure-to-register case and reversing conviction). In this case, the state sought to prove Heggs's knowledge of the law at the time of the alleged offense with circumstantial evidence. Accordingly, we apply the circumstantial-evidence standard of review.

12

At the first step of the analysis, we must identify the circumstances proved relevant to whether Heggs knowingly violated the predatory-offender-registration statute by not specifying that his workplace address also was his secondary address. *See Firkus*, 31 N.W.3d at 478; *see also Alarcon*, 932 N.W.2d at 648-49 (identifying circumstances proved relevant to whether appellant knowingly violated predatory-offender-registration statute by not registering primary address). Neither party attempts to identify the circumstances proved relevant to whether Heggs knowingly violated the predatory-offender-registration statute. We identify the following relevant circumstances proved. Approximately one month before his arrest, Heggs signed a change-of-information form on which he handwrote his workplace address under the heading "Current Employment Information" but left blank the part of the form under the heading "Current Secondary and Other Addresses." Approximately three weeks before his arrest, Heggs signed an address-verification form on which his workplace address was pre-printed, but the part of the form under the heading "New Secondary Address" was left blank. At the time of his arrest, Heggs was "regularly staying overnight" at his workplace address. *Heggs*, 2024 WL 3493817, at *3.[4]

---

[4]The state relies in part on the testimony of the BCA special agent. She testified that she had never met Heggs but had reviewed the BCA's file on him. Based on her review of Heggs's prior registrations, she testified generally that Heggs knew that he was required to register as a predatory offender. But she did not testify about whether Heggs knew or believed that he was required to specify that his workplace address also was his secondary address, such as by writing that address multiple times in multiple parts of the change-of-information and address-verification forms. Thus, we do not include any facts stated by the special agent in the circumstances proved.

At the second step of the analysis, we must determine whether "the circumstances proved, when viewed as a whole," are consistent with guilt. *See Firkus*, 31 N.W.3d at 478 (quotation omitted). The state contends that Heggs "knew of his duty to register both a secondary address and a work address on the registration forms." The state's contention does not refer specifically to whether Heggs knew or believed that he was required to specify that his workplace address also was his secondary address, such as by writing that address multiple times in multiple parts of the change-of-information and address-verification forms, which we assume to be the applicable law. Nonetheless, one reasonable inference that may be drawn from the circumstances proved is that Heggs knew or believed that he was required to be more specific when providing information to ensure that the registration forms effectively communicated that his workplace address also was his secondary address.

Next, we must determine whether the circumstances proved are "inconsistent with any rational hypothesis other than guilt." *See Firkus*, 31 N.W.3d at 478 (quotations omitted). Heggs contends that one reasonable inference from the circumstances proved is that he "believed he was in compliance with his registration by registering the restaurant as his employment address and that he was not violating the registration statute by not also listing it as a secondary address." The state does not specifically respond to Heggs's identification of a hypothesis that is inconsistent with guilt. The state contends only that Heggs "knew of his duty to register both a secondary address and a work address on the registration forms." But the precise question is whether Heggs knew or believed that, to comply with the statute, he was required to specify that his workplace address also was his

14

secondary address, such as by writing that address multiple times in multiple parts of the change-of-information and address-verification forms. The state contends that Heggs's knowledge may be inferred from the fact that he initialed each paragraph of a 27-paragraph recitation of registration requirements in the address-verification form. But nowhere in that form is there a statement that a person in Heggs's circumstances is required to specify that a workplace address also is a secondary address, such as by writing that address multiple times in multiple parts of a form.

Heggs's asserted hypothesis is a rational hypothesis and is inconsistent with guilt. Within one month before the alleged offense, Heggs twice provided the address where he worked and where (it has been established) he regularly or occasionally stayed overnight. *See Heggs*, 2024 WL 3493817, at *3. Heggs did not conceal the address that the state contends was not properly provided.[5] The state's theory of a registration violation depends on a highly technical interpretation of the predatory-offender-registration statute. If we assume that the state is correct in its interpretation of the statute, the state would be required to prove beyond a reasonable doubt that Heggs interpreted the statute in the same manner and, thus, had "knowledge of the law at the time of the violation." *See Mikulak*, 903 N.W.2d at 604. In other words, the state would be required to prove that Heggs subjectively believed that he was required to specify that his workplace address also was his secondary

---

[5]Heggs's conduct stands in contrast with the conduct of other persons who have been convicted of failing to register as a predatory offender because they neglected or refused to communicate any information required by statute. *See, e.g.*, *State v. Larson*, 980 N.W.2d 592, 595 (Minn. 2022); *State v. Martin*, 941 N.W.2d 119, 121 (Minn. 2020); *State v. Washington*, 908 N.W.2d 601, 604 (Minn. 2018); *Weitzel v. State*, 883 N.W.2d 553, 555 (Minn. 2016); *State v. Jones*, 729 N.W.2d 1, 3 (Minn. 2007).

address or to provide that address multiple times and that he chose to violate the law by not doing so. The conclusion that Heggs knew or believed that he was required to do more than he actually did is not the only reasonable inference that may be drawn from the circumstances proved. As Heggs contends, another reasonable inference is that he believed that he was complying with the statute. Accordingly, we conclude that the circumstances proved are *not* "inconsistent with any rational hypothesis other than guilt." *See Firkus*, 31 N.W.3d at 478 (quotations omitted).

Thus, the circumstantial evidence is insufficient to prove that Heggs knowingly violated the predatory-offender-registration statute.

## DECISION

In sum, the state did not prove beyond a reasonable doubt that Heggs knowingly failed to register as a predatory offender.

**Reversed.**

16